### HENRY v. SALISBURY.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

SALES—WARRANTY—STATEMENTS IN SUPPLEMENTAL CATALOGUE.

The statement of a horse's age in a supplemental catalogue of sale is not a warranty where the catalogue proper contained the conditions of sale, and the statement that "ages and heights of horses are approximated by owners, and are believed to be correct, but are not guarantied," since persons buying under a supplemental catalogue are chargeable with notice that they must look elsewhere for the terms and conditions of sale.

Appeal from trial term, New York county.

Action by Harry S. Henry against Monroe Salisbury for breach of warranty. The appeal was transferred from the First department. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

H. M. Whitehead, for appellant.
David May, for respondent.

WILLARD BARTLETT, J. This is an action to recover damages for a breach of warranty upon the sale of a horse. The alleged warranty related to the age of the animal, and is said to have been contained in the supplemental catalogue of a large auction sale of horses which took place at Lexington, Ky., in February, 1892. The plaintiff was a purchaser at that sale, buying a mare known as "May

Day," which had theretofore been the property of the defendant. In the supplemental catalogue, from which the plaintiff bought, May Day is described as a bay mare, foaled in 1874, "and therefore eighteen years old." The plaintiff claims that this statement was a warranty in behalf of the defendant, as the owner of the mare, to the effect that she was only 18 years old at the time of the sale, whereas she was then in fact 22 years old. The proof on the trial was conflicting as to the age of the animal, but there was evidence which fully justified the jury in finding that she was foaled in 1870, instead of 1874, and was, therefore, 22 years old, instead of 18, when purchased by the plaintiff at Lexington. If the only statement as to the age of May Day published in behalf of her owner to intending purchasers at the auction sale had been that which I have already mentioned, in the supplemental catalogue, it could undoubtedly be regarded as amounting to a warranty, for a breach of which the owner would be responsible in damages to the buyer. But it did not stand alone. There was another and much larger catalogue preceding this supplement. It was a book of 366 pages, upon the cover of which it was described as the "Catalogue of a Breeders' Sale, by Woodard & Shanklin, at Lexington, Ky., on February 8, 9, 10, 11, 12, and 13, 1892." Elaborate conditions of sale were printed upon the second and third pages, comprising various details as to what the sellers did and did not guaranty in regard to the animals offered for sale. Among these conditions was the following: "Ages and heights of horses are approximated by owners, and are believed to be correct, but are not guarantied." Included in this principal catalogue were 11 horses offered for sale by Mr. Harry S. Henry, the plaintiff in this action. The supplemental catalogue was separate from the large one, and May Day was sold under it on February 13, 1892, the last day of the sale. Mr. Henry testified upon the trial that he did not see the principal catalogue there on the afternoon when the mare was sold. He presumed that he had received one, but did not remember whether he had or not. "As a rule," he said, "I know that the catalogue of a sale contains the terms and conditions of that sale; but I never read the conditions and terms, and I do not know anything about them. I know they are contained in the sales book, but I never read them. Never read them in my life. I do not know that I have. There were no terms and conditions of the sale on the catalogue I bought from." In this last statement it is evident that the plaintiff referred only to the supplement. It seems to me perfectly clear, however, that under all the circumstances of the case he and all other persons buying under the supplemental catalogue were chargeable with notice of the fact that it was merely a supplement, and that they must look elsewhere for the terms and conditions of the sale. It was entitled "Supplemental Catalogue of Woodard & Shanklin's Sale." It contained no statement of the terms and conditions of the sale, unless the declaration by the defendant that he offered his horses for sale only by reason of "want of money or a good bankable note due in three or six months"

may be deemed the statement of one condition. The sale under this catalogue was a continuation of that under the large book catalogue in which the plaintiff himself had his 11 horses. He expressly so testified. It is impossible to believe that he did not fully understand that the auction at which he bought May Day was a part and parcel, and simply the conclusion, of the auction in which his own horses had been put up for sale. The sale under the supplemental catalogue being a mere continuation of the sale under the principal catalogue, the representations as to the age of the horses described in the supplement were made subject to the qualifications and limitations stated in the conditions set out in the principal catalogue which preceded it; and, as we have already seen, one of those conditions distinctly declared that the statements as to the ages of the animals were not guarantied. The catalogues are to be read as one catalogue in this respect, just as several instruments between the same parties are treated as one instrument when made at the same time, and relative to the same subject-matter. See Marsh v. Dodge, 66 N. Y. 533. It is true, the plaintiff testified that he never read the terms and conditions of that sale, or any other sale, it being his habit to go to auctions to buy horses without knowing the terms and conditions under which he buys them, as those terms and conditions do not interest him. His omission to read them, however, in this case, does not affect the defendant's liability, if the statements published by the auctioneers at the sale in regard to the age of May Day were such as would have notified any buyer who took reasonable care in his conduct as a bidder at the sale of the fact that the owners did not warrant the statements in the catalogue as to the ages of the horses, but that such statements were only approximate. I think this was done by the express declaration to that effect in the principal catalogue, and by means of the notice conveyed to purchasers in the title of the second catalogue, describing it as a supplement. This called attention to the existence of the main catalogue just as distinctly as the use of the word "codicil" in an instrument would imply the existence of a will. To hold the defendant liable, we must first be able to point to a warranty in his behalf. The statement as to the age of May Day contained in the supplemental catalogue, and relied upon as constituting a warranty in this case, cannot properly be treated as such, because of the notice contained in the preceding catalogue to the effect that the age of the horses was not guarantied. Ignorance of that notice, if ignorance existed on the part of the purchaser, cannot be allowed to turn the statement in the supplement into a warranty. It was plainly his own fault if he did not ascertain what the principal catalogue said in regard to the age of the animals to be sold.

In my opinion, the plaintiff failed to make out any cause of action. I think the judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.