RUDOLPH LEWITUS, Respondent, *v.* BROWN & SECCOMB, Appellant.

First Department, January 31, 1930.

*Frank I. Finkler* of counsel [*Jesse H. Finkler* with him on the brief; *Finkler & McEntire*, attorneys], for the appellant.

*David Bernstein*, for the respondent.

MERRELL, J. The defendant is a corporation engaged in the business of conducting a fruit and produce auction house, dealing exclusively in fresh fruits and vegetables. The defendant does not buy or sell merchandise on its own account, but only on commission as auctioneer. Plaintiff in his complaint alleges that on October 3, 1924, he purchased from defendant 1,170 lugs of grapes, and that the defendant expressly warranted, agreed and represented that

the 1,170 lugs contained Alicante grapes, and that the plaintiff, relying on and believing the alleged representations and warranty, accepted the grapes and paid therefor; that upon delivery of said grapes, the plaintiff alleges, he discovered that the grapes were not Alicantes, but were Lenoirs, and that the alleged representations of the defendant were false and fraudulent and known to be false and fraudulent and untrue at the time they were alleged to have been made by defendant to plaintiff.

At the trial plaintiff endeavored to show that the sale was by description. The only proof offered by plaintiff to show a sale by description was that of the plaintiff himself, who testified that the auctioneer conducting the sale announced: " I am now selling 409, 1,170 lugs of Alicante grapes." The figures " 409 " referred to the catalogue number of the lot of grapes sold to the plaintiff. At the time of the sale the defendant delivered to prospective purchasers at the auction a catalogue of the various grapes which the defendant would offer for sale at the defendant's auction rooms on October 3, 1924. The plaintiff at the time of bidding was in possession of a copy of this catalogue. For the lot " 409 " the catalogue roads: " Line 409, 1,170 Lidded Lugs Alicantes." At the trial the auctioneer who conducted the sale denied that he made any announcement concerning the line 409 at the time of the sale. The plaintiff, however, testified, referring to the auctioneer's announcement: " He just says ' I am now selling lot 409, 1,170 lugs of Alicante grapes.' " It is the contention of the plaintiff that such representation of the auctioneer constituted a warranty surviving the terms of sale. The evidence disclosed that Alicante grapes were of a certain high-class variety, and that Lenoirs were of an inferior variety. After the grapes were struck down to the plaintiff upon his bid he accepted and paid for the same without examination.

We are of the opinion that the alleged representation which the plaintiff claims the auctioneer made was not a warranty surviving acceptance of the grapes which he purchased. Upon the catalogue used at the sale, and to which the plaintiff was shown to have had access prior to bidding upon the grapes, under the title " Terms of Sale for Grapes Sold in Car Lot Quantities," there appeared the following:

" All goods are sold subject to the following terms:

" *First.* References to goods by letter, words, signs or figures under the head ' marks ' or Government inspection reports or otherwise in the catalogue are for description only, and are not representations or warranties.

" *Second.* Sales are not made by sample nor does the seller nor

the Auction Company warrant or represent the bulk of goods to be like that examined by or exhibited to the buyer.

"Goods are sold and bought as and where they stand at the buyer's risk.

"There is no warranty either expressed or implied either of quality or quantity or condition of the goods or containers."

Then, in heavy-type capital letters, printed on the inside cover of the catalogue and immediately preceding the lines and description of the various carload lots of grapes to be sold, was the following:

"IMPORTANT

"ALL CARS IN THIS CATALOGUE ARE SOLD IN STRAIGHT CAR LOTS AND ARE OFFERED WITH THE UNDERSTANDING THAT BUYERS ASSUME ALL RISKS AS TO CONDITION, QUANTITY, QUALITY, *variety*, ETC., AND ONLY SUCH BUYERS AS AGREE TO ACCEPT THESE TERMS IN ADDITION TO OUR REGULAR TERMS OF SALE SHALL BID. IT IS FURTHER UNDERSTOOD AND AGREED THAT ALL CARS ARE TO BE UNLOADED BY THE BUYER AND RELEASED TO THE RAILROAD NO LATER THAN 6 P. M. ON THE DAY FOLLOWING THE DATE OF SALE." (Italics are the writer's.)

The evidence clearly shows that the plaintiff, at the time he became a buyer of the grapes in question, knew of these important terms of sale of the grapes offered by defendant and of the condition that in becoming a buyer at the sale it was with the understanding that he assumed all risks as to the variety of the grapes sold. While undoubtedly, under the provisions of the Sales of Goods Act (Laws of 1911, chap. 571, adding to Personal Property Law, art. 5), a representation as to quality would survive acceptance by the purchaser, yet under the conditions under which these goods were sold, the plaintiff clearly purchased the grapes at the auction sale without any reliance upon the alleged representation as to variety. For these reasons we do not think there was any representation upon which the plaintiff relied which survived acceptance of the grapes in question.

Holding as we do, that, under the terms of sale and the conditions under which plaintiff purchased the grapes in question, there was no warranty surviving acceptance upon which plaintiff relied, and that, therefore, plaintiff has no cause of action for damages for breach of warranty, it is unnecessary to advert, except in passing, to other grounds urged by defendant for the reversal of the judgment appealed from. The record shows that the sale of the grapes was made by the defendant as agent for a known principal, Opolinsky. Plaintiff testified at the trial that he knew Opolinsky and his connection with the catalogue, and that he knew him to be the person whose name appeared at the top of the catalogue on the

page upon which the carload of grapes in question appeared; that he knew Opolinsky was the receiver of the merchandise, and that Opolinsky himself stood alongside the auctioneer at the sale, and that Opolinsky had told him that lot 409 was the same as lot 408, which the plaintiff had also bid in. It thus appears that plaintiff, at the time he purchased the grapes, was fully advised that the sale was made by Opolinsky through the defendant as his auctioneer and agent. Under such circumstances the plaintiff may not maintain an action against the defendant as agent. As was said by this court in *Hernandez* v. *Brookdale Mills, Inc.* (194 App. Div. 369, 381) in an opinion by LAUGHLIN, J.: " When the principal is known to the person dealing with the agent and it is understood by both parties that the contract is negotiated for the principal, the courts should not close their eyes to the manner in which such contracts are constantly negotiated and by the application of an arbitrary rule hold that a contract intended and understood to be that of the principal personally binds the agent, who had no intention of pledging his personal credit, and binds the principal as well, so that the party dealing with him may look to whichever of them he finds to be the more responsible financially."

Elliott on Contracts (Vol. 1, § 465, p. 696) states the rule as follows: " It follows that in those instances where the agent discloses his principal and does exactly what he is legally authorized to he mutually binds his principal and the third party, and does not render himself liable at least to the third party." (See, also, *Hall* v. *Lauderdale*, 46 N. Y. 70; *American National Bank of New York* v. *Wheelock*, 82 id. 118.)

Further, the proofs fail to show that the plaintiff, in fact, relied upon the alleged warranty. (*Crocker-Wheeler Co.* v. *Johns-Pratt Co.*, 29 App. Div. 300; affd., 164 N. Y. 593.) And, finally, the verdict in plaintiff's favor at Municipal Court was unsupported by sufficient and proper evidence of damages.

Upon each of the grounds stated the trial court should have dismissed the plaintiff's complaint on defendant's motion made at the close of plaintiff's case and renewed at the close of the evidence and to which denials the defendant duly excepted.

The determination of the Appellate Term, affirming the judgment of the Municipal Court, and the said judgment, should be reversed, and plaintiff's complaint dismissed, with costs to the appellant in all courts.

DOWLING, P. J., MARTIN, O'MALLEY and PROSKAUER, JJ., concur.

Determination appealed from and judgment of the Municipal Court reversed and complaint dismissed, with costs to the appellant in all courts.