Leonard H. Sandler, J.
On May 16, 1962, Dr. Arthur Weisz attended an auction conducted by the Parke-Bernet Galleries, Inc., where he ultimately bought for the sum of $3,347.50' a painting listed in the auction catalogue as the work of Raoul Dufy. Some two years later, on May 13,1964, David and Irene Schwartz bought for $9,360 at a Parke-Bernet auction a painting also listed in the catalogue as the work of Raoul Dufy.
Several years after the second auction, as a result of an investigation conducted by the New York County District Attorney’s office, the plaintiffs received information that the paintings were in fact forgeries. When this was called to Parke-Bernet’s attention, Parke-Bernet denied any legal responsibility, asserting among other things that the conditions of sale for both auctions included a disclaimer of warranty as to genuineness, authorship and the like.
Following a formal demand by the plaintiffs for return of the purchase price, these two lawsuits were commenced against Parke-Bernet and one Carroll Hogan, a former employee actively concerned with the two auctions. Juries having been waived, both cases were tried jointly.
In each case, several causes of action are set forth, all of them quite closely interrelated, and all ultimately turning on the identification by Parke-Bernet of the paintings as the work of Dufy.
In the first cause of action, which adequately presents the issues to be resolved, the catalogue listing “ Raoul Dufy” is asserted to constitute an express warranty, as that term was defined under the former Sales Act, in effect when the auctions took place (former Personal Property Law, § 93).
The actions against Hogan do not require extended attention. The facts do not afford any basis for fixing personal liability. Accordingly, the motion to dismiss each of the complaints against him is granted.
*1079 As to the actions against Parke-Bernet, I find that the following facts were quite clearly established by the evidence.
(1) Each of the plaintiffs bought the paintings in question in the belief that they were painted by Raoul Dufy, had formed this conclusion because Parke-Bernet so stated in the respective catalogues, and would not have bought the paintings if they were not believed to be genuine.
(2) At the time of the auctions Parke-Bernet also believed the paintings ascribed to Dufy in the catalogues were his work.
(3) Neither of the paintings was in fact painted by Dufy. Both are forgeries with negligible commercial value.
The most substantial of the defenses interposed by Parke-Bernet is that the conditions of sale for the auctions, appearing on a preliminary page of each catalogue, included a disclaimer of any warranty and that the plaintiffs are bound by its terms.
This issue embraces two separate questions, each of which merits careful examination.
First, did the plaintiffs in fact know of the disclaimer, and, if they did not, are they legally chargeable with such knowledge.
Second, if the answer to either part of the first question is yes, was the disclaimer effective, under all the circumstances of the auctions, to immunize Parke-Bernet from the legal consequences that would normally follow where a sale results from a representation of genuiness that is thereafter disclosed to be completely inaccurate.
Although the auctions were separated in time by two years, the catalogues were quite similar in all legally significant respects, and the basic auction procedure was the same.
The catalogues open with several introductory pages of no direct relevance to the lawsuits. There then follows a page headed “ Conditions of Sale ”, in large black print, under which some 15 numbered paragraphs appear, covering the side of one page and most of a second side. These provisions are in clear black print, somewhat smaller than the print used in the greater part of the catalogue.
Paragraph 2, on which Parke-Bernet relies, provides as follows : ‘ ‘ The Galleries has endeavored to catalogue and describe the property correctly, but all property is sold ‘as is ’ and neither the Galleries nor its consign warrants or represents, and they shall in no event be responsible for, the correctness of description, genuineness, authorship, provenience or condition of the property, and no statement contained in the catalogue or made orally at the sale or elsewhere shall be deemed to be such a warranty or representation, or an assumption of liability. ’ ’
*1080 The next page in each catalogue is headed ‘ ‘ List of Artists ’ and contains in alphabetical order, one under the other, a list of the artists with a catalogue number or numbers appearing on the same line with the named artist. The implicit affirmation that the listed artists are represented in the auction and that the catalogue numbers appearing after their names represent their work could scarcely be clearer.
The name of Raoul Dufy is listed in each catalogue, together with several catalogue numbers.
After the pages on which the artists are listed, over 80 pages follow in each catalogue on which the catalogue numbers appear in numercial order with descriptive material about the artist and the work.
Turning in each catalogue to the catalogue numbers for the paintings involved in the lawsuits, there appears on the top of the page a conventional black-and-white catalogue reproduction of the painting, directly under it the catalogue number in brackets, and the name Raoul Dufy in large black print, followed in smaller print by the words 1 ‘ French 1880-1953 ’ ’.
On the next line the catalogue number is repeated together with the name of the painting, a description of it, and the words, “ Signed at lower right Raoul Dufy.” Finally, there appears a note that a certificate, by M. Andre Pacitti, will be given to the purchaser.
The procedure followed at both auctions was to announce at the beginning of the auction that it was subject to the conditions of sale, without repeating the announcement, and at no point alluding directly to the disclaimer.
As to the first auction, I am satisfied that Dr. Weisz did not in fact know of the conditions of sale and may not properly be charged with knowledge of its contents. I .accept as entirely accurate his testimony that on his prior appearances at Parke-Bernet auctions he had not made any bids, and that on the occasion of his purchase he did not observe the conditions of sale and was not aware of its existence.
The test proposed for this kind of issue by Williston, quite consistent with the decided cases, is whether 1 ‘ the person * * * should as a reasonable man understand that it contains terms of the contract which he must read at his peril.” (1 Williston, Contracts, § 90D; see Linn v. Radio Center Delicatessen, 169 Misc. 879; Moore v. Schlossman’s Inc., 5 Misc 2d 693; Wilson v. Manhasset Ford, 27 Misc 2d 154; 1 Corbin, Contracts, § 33; Necessity of buyer’s actual knowledge of disclaimer of warranty of personal property, 160 A. L. R. 357.)
*1081 The most obvious characteristic of the two Parke-Bernet auctions is that they attracted people on the basis of their interest in owning works of art, not on the basis of their legal experience or business sophistication. Surely it is unrealistic to assume that people who bid at such auctions will ordinarily understand that a gallery catalogue overwhelmingly devoted to descriptions of works of art also includes on its preliminary pages conditions of sale. Even less reasonable does it seem to me to expect a bidder at .such an auction to appreciate the possibility that the conditions of sale would include a disclaimer of liability for the accuracy of the basic information presented throughout the catalogue in unqualified form with every appearance of certainty and reliability.
For someone in Dr. Weisz’ position to be bound by conditions of sale, of which he in fact knew nothing, considerably more was required of Parke-Bernet to call those conditions of sale to his attention than occurred here.
The cases relied upon by Parke-Bernet where buyers were held to be bound by conditions of sale in auction catalogues are not at all apposite. For one thing, in only one of the cases does the opinion recite that the buyer flatly denied knowledge of the provision. (See Henry v. Salisbury, 14 App. Div. 526.) And in that case the buyer, a frequent bidder at the auction in question, acknowledged that he knew there were conditions of sale but had not undertaken to become familiar with them. More importantly, these auction cases for the most part concern business auctions, in which sellers and buyers were part of a business grouping in which a general knowledge of the governing rules and usages was reasonably to be anticipated. (See, e.g., Lewitus v. Brown & Seccomb, 228 App. Div. 146; Havarette v. Travis-Ziegler Co., 194 N. Y. S. 832; Alexander v. Sola, 185 N. Y. S. 869.)
As to the Schwartz case, I am satisfied from the evidence that Mrs. Schwartz knew of the conditions of sale, and that both Schwartz plaintiffs are chargeable with that knowledge since they both participated in the purchase.
This factual conclusion leads to consideration of the extremely interesting question whether the language of disclaimer relied upon as a bar to the actions should be deemed effective for that purpose. No case has come to my attention that squarely presents the issue raised by the underlying realities of this case.
What is immediately apparent from any review of the evidence is that, notwithstanding the language of disclaimer, Parke-Bernet expected that bidders at its auctions would rely upon *1082 the accuracy of its descriptions, and intended that they should. Parke-Bernet, as the evidence confirms, is an exceedingly well-known gallery, linked in the minds of people with the handling, exhibition and sale of valuable artistic works and invested with an aura of expertness and reliability. The very fact that Parke-Bernet was offering a work of art for sale would inspire confidence that it was genuine and that the listed artist in fact was the creator of the work.
The wording of the catalogue was clearly designed to emphasize the genuineness of the works to be offered. The list of artists followed by catalogue numbers, the black-and-white reproductions of the more important works, the simple listing of the name of the artist with the years of his birth and death, could not have failed to impress upon the buyer that these facts could be relied on and that one could safely part with large sums of money in the confident knowledge that a genuine artistic work was being acquired.
Where one party in a contractual relationship occupies a position of superior knowledge and experience, and where that superior knowledge is relied upon and intended to be relied upon by the other, surely more is required for an effective disclaimer than appears here.
After reassuring the reader that Parke-Bernet endeavored to catalogue the works of art correctly, there follow highly technical and legalistic words of disclaimer in a situation in which plain and emphatic words are required. And this provision, in light of the critical importance to the buyer of a warning that he may not rely on the fact that a work attributed to an artist was in fact his creation, is in no way given the special prominence that it clearly requires.
The language used, the understated manner of its presentation, the failure to refer to it explicitly in the preliminary oral announcement at the auction, all lead to the conclusion that Parke-Bernet did not expect the bidders to take the disclaimer too seriously or to be too concerned about it. I am convinced that the average reader of this provision would view it as some kind of technicality that should in no way derogate from the certainty that he was buying genuine artistic works, and that this was precisely the impression intended to be conveyed.
In denying legal effect to the disclaimer I am acting consistently with a whole body of law that reflects an increasing sensitivity to the requirements of fair dealing where there is a relationship between parties in which there is a basic inequality of knowledge, expertness or economic power. (Cf. Klar v. H & M *1083 Parcel Room, 270 App. Div. 538; Lachs v. Fidelity & Gas. Co. of N. Y., 306 N. Y. 357; Abel v. Paterno, 245 App. Div. 285.)
Another defense of some interest is the claim that the actions are barred by paragraph 14 of the conditions of sale, which provides that ‘1 any and all claims of a purchaser shall be deemed to be waived and shall be without validity unless made in writing to the Galleries within ten days after the sale. ’ ’
This provision is of course inapplicable to Weisz in view of my earlier finding that he is not chargeable with knowledge of the conditions of sale.
Assuming arguendo that this provision is properly construed to apply to claims not known to the purchaser within the prescribed period, it clearly cannot stand. The rule was well established under the former Sales Act (and continues to be followed under the Uniform Commercial Code) that a limitation which applied to a claim that could not realistically be known before the end of the limitation was unreasonable and invalid. (Jessel v. Lockwood Textile Corp., 276 App. Div. 378.)
The instant facts — where a buyer justifiably relied on a representation that a named artist created a work of art, was intended to rely on it, and no reason was presented for questioning the accuracy of the representation during the 10-day period clearly come within that rule.
In any event, I believe that the provision in question is most reasonably and fairly construed as applying only to claims which were known or should have been known to the buyer during the 10-day period.
Parke-Bernet’s related argument that the purchaser did not act within the reasonable time required by subdivision 3 of section 150 of the former Personal Property Law seems to me unsound for similar factual reasons.
The remaining defenses are without substantial merit.
The applicable period of limitations for both actions is six years, as defined in CPLR 213 (subd. 2), which governs the instant lawsuits since the auctions occurred before the effective date of the Uniform Commercial Code and relates to an action based upon a contractual obligation express or implied. Accordingly, these actions are not barred by a statutory limitation.
The actions are clearly not barred by laches, a doctrine which is wholly inapplicable here for several reasons, but most obviously because the plaintiffs in fact acted promptly when they learned the truth. (See 36 N. Y. Jur., Limitations and Laches, §§ 153, 154, 157.)
*1084 Finally, Parke-Bernet may not avoid liability on the claim that it was merely acting as agent for the real owner and was known to be so acting. The owner was not named, nor was information given from which he could be identified.
Nothing is clearer than that these buyers relied, not on some unknown foreign owner, but on Parke-Bernet. (See Meyer v. Redmond, 205 N. Y. 478; 2 N. Y. Jur., Agency, §§ 311, 314, 315.)
Judgment may be entered for the plaintiff Weisz against Parke-Bernet in the sum of $3,347.50, and for the plaintiffs David and Irene Schwartz in the sum of $9,360, both judgments of course with appropriate interest and costs. The actions against Carroll Hogan are dismissed, and judgments may be entered in his behalf, with costs.