OPINION OF THE COURT
Stanley L. Sklar, J.
The principal issues raised by plaintiffs motion for summary judgment are: (1) must plaintiff, in order to recover for breach of warranty, establish reliance upon the warranty? (2) does the language of the contract in issue establish, as a matter of law, that certain assumptions attached to the contract were warranted as having been used in creating projections attached to the contract? and (3) is there an absence of genuine material factual issues as to the claimed breach of other warranties? This court answers all three questions in the negative.
INTRODUCTION
McKesson Corporation conferred with its financial advisor, Morgan Stanley and Co., about a sale of C.F. Mueller Corporation, a well-known pasta manufacturer. McKesson and Morgan Stanley then prepared an offering memorandum which contained financial information and projections.
Eight bidders, including CPC International, Inc., visited Mueller in September 1983, for a presentation which included a discussion of projections of Mueller’s performance. In addition, various planning assumptions were handed out. McKesson, at that time, warned that the projections were only estimates and were grounded upon hypothetical assumptions, and disclaimed any liability with respect to them.
During the negotiation process, CPC, which used the services of its own investment banker, Dillon Read and Co., insisted on and received in the contract of purchase various assurances with respect to the projections. On November 9, *836 1983, CPC signed the contract and thereafter purchased Mueller for $124,300,000.
CPC now sues to recover $61.3 million in compensatory plus punitive damages. The complaint sets forth five causes of action. The first alleges breaches of warranties concerning projections for Mueller’s present and future performances given to CPC by McKesson (including by Corporation of America, its subsidiary). The second alleges that McKesson falsely warranted in the contract that there had been no material adverse change in the Mueller business from July 1, 1982 to the closing on December 1, 1983. The third cause of action is asserted against McKesson for common-law fraud for knowingly engaging in the misconduct forming the basis of the first and second causes of action. It is also asserted against Morgan Stanley, and against the individual defendants, as executive employees of Mueller and/or McKesson, for aiding and abetting McKesson’s alleged fraud and for conspiracy to commit common-law fraud. The fourth and fifth causes of action are asserted against all defendants for, respectively, violations of General Business Law § 352-c (Martin Act) and of Securities Act of 1933 § 17 (a) (15 USC § 77q), based upon the same facts giving rise to the cause of action for common-law fraud.
On an earlier motion, the third cause of action (fraud) was dismissed as against Morgan Stanley and the individual defendants, and the fifth cause of action (violation of the Securities Act of 1933 § 17 [a]) was dismissed as against all defendants (Wallach, J.). The First Department modified that decision by dismissing the fourth cause of action as well. (CPC Intl. v McKesson Corp., 120 AD2d 221 [1986].) Issue having been joined since the decision on the earlier motion, CPC now moves for partial summary judgment establishing McKesson’s liability on the first cause of action for breach of a contractual warranty; the issue of damages is expressly left for subsequent trial.
THE WARRANTIES
The claimed warranties at issue are set forth in the contract at article 2, entitled: "Representations and Warranties of Selling Parties”. The parties agreed that "[a]s a material inducement to Buyer to execute and perform its obligations under this agreement, the Selling Parties, jointly and severally, represent and warrant to buyer [the matters thereafter set forth in sections 2.0 through 2.25]”. Section 2.4 (d) and *837 exhibit 2.4 (d) describe and set forth projections of income and operating profits for Mueller for the then current fiscal year (FYE 84) and for the two succeeding fiscal years (the Projections). Section 2.4 (d) states: "(d) exhibit 2.4 (d) sets forth the following projections: (i) the projected income statements of Corporation for the twelve-month periods ending March 31 in each of the years 1984 through 1986, (ii) the projected statement of changes in financial position of Corporation for the twelve-month periods ending March 31 in each of the years 1984 through 1986, (iii) the projected new product development expense of Corporation for the twelve-month periods ending March 31 in each of the years 1984 through 1986, and (iv) the projected operating profit of Corporation (summary SBU) for each of the twelve-month periods ending March 31 in each of the years 1984 through 1986. Selling Parties make no representation or warranty whatsoever concerning the above projections except as specifically set forth in paragraph (e) below.”
The following provision, section 2.4 (e), sets forth certain representations and warranties with regard to the projections referred to above. That provision states that: "The projections referred to in paragraph (d) above (the 'Projections’) were generated by Corporation, and reviewed by McKesson Management, to support the operating plan of Corporation for the fiscal years ending March 31, 1984 through 1986. The Projections were generated by Corporation, and reviewed by McKesson management, during the first quarter of the fiscal year ending March 31, 1984, based upon the circumstances existing at that time. McKesson management are using the Projections relating to the fiscal year ending March 31, 1984 to measure the operating performance of Corporation for such fiscal year. The Projections have been prepared using the same general format and accounting principles used in the preparation of the Financial Statements referred to in paragraph (a) above, provided, however, that various assumptions used in the preparation of the Projections, which assumptions are set forth in exhibit 2.4 (d), are not applicable to the preparation of historical financial statements such as the Financial Statements.”
Section 12.3 states that: "this Agreement and all of the exhibits furnished hereunder, constitute the sole and entire agreement between the parties”. Section 6.0 provides that all representations and warranties made in the contract "shall be true in all material respects on and as of the closing date” unless otherwise permitted by the agreement. Section 10.0 *838 reiterates and expands upon this provision, stating that: "[A]ll representations, warranties and agreements made by any party in this agreement shall not be deemed to be waived or otherwise affected by any investigation made by the other party hereto, and shall survive the closing”. In section 10.1 McKesson further agrees to indemnify CPC and hold it harmless from all damages suffered "by reason of or resulting from a breach of any representation, warranty or agreement by the selling Parties contained in or made pursuant to this Agreement, or any facts or circumstances constituting such a breach”.
CPC now moves for summary judgment, alleging that documents prepared by the McKesson and/or Mueller management prior to closing and during the course of conducting Mueller’s day-to-day business affairs, conclusively establish breaches of the warranties set forth in section 2.4 (d) and (e) of the contract. McKesson opposes the award of such relief, arguing instead, that summary judgment should be awarded in its favor on the first cause of action and so much of the third and fourth* causes of action as are based on the claim that the statements contained in section 2.4 (e) are inaccurate.
THE MOTION — PROCEDURE
Both McKesson and CPC raise threshold procedural objections to the relief demanded herein. McKesson first argues that the court must deny CPC’s motion on the ground that the supporting papers initially submitted, an affidavit of an attorney lacking personal knowledge and allegedly unauthenticated documents, are legally insufficient. This argument is unpersuasive.
The affidavit of an attorney without personal knowledge of the facts is proper and sufficient as a matter of law if it serves as the vehicle for the introduction of documentary evidence on which the motion for summary judgment is founded (Zuckerman v City of New York, 49 NY2d 557). Examination of the documents relied upon by CPC in support of its motion indicates that they were obtained from Mueller’s files and pertain to Mueller’s business. Although plaintiff may have failed, in its moving papers, to lay a proper foundation for their admissibility, McKesson’s failure to challenge the authenticity of the documents by showing facts negating their authenticity *839 militates strongly in favor of their being considered on this motion (Great Atl. & Pac. Tea Co. v Lloyd Brasileiro Patrimonio Nacional, 36 Misc 2d 821). The absence of contradictory factual allegations is particularly compelling since codefendants Blattman, Merrick and Brounstein were the authors or recipients of a majority of the documents. Indeed, defendants state that they "do not quibble about the authenticity of the handful of McKesson documents annexed as exhibits to CPC’s affidavits”. Thus, absent a challenge to the accuracy of the facts as set forth in the documents, the court will entertain this motion on its merits (Great Atl. & Pac. Tea Co. v Lloyd Brasileiro Patrimonio Nacional, supra; see, Kuehne & Nagel v Baiden, 36 NY2d 539).
In its procedural objection, CPC argues that the court is without authority to award McKesson summary judgment in the absence of a cross motion. This argument is also lacking in merit. A motion for summary judgment, irrespective of by whom made, invites a court to search the record and to award judgment where appropriate (CPLR 3212 [b]; Fertico Belgium v Phosphate Chems. Export Assn., 100 AD2d 165).
RELIANCE
It is, therefore, necessary to determine whether, as alleged by CPC, McKesson breached the contractual warranties it gave to CPC. Both parties agree that subsections d and e of section 2.4 of the contract constitute express warranties. CPC contends, however, that having established the making of the warranty, it need only demonstrate its breach, i.e., that it was materially false when made, to be entitled to recover on its claim. In response, McKesson argues that decisional law in this State also requires that a purchaser prove that the warranty sued upon was material and was relied upon if it is to succeed in an action for breach of warranty.
Before addressing the issue of whether the warranty was breached, it is therefore necessary to determine if CPC must demonstrate, as a threshold issue, that it relied upon the warranty. The issue of whether reliance is an essential element in a cause of action for breach of an express contractual warranty is not well settled. To the extent that the Uniform Commercial Code is applicable by analogy, the need to establish reliance in that context is also unsettled. (See generally, Clark and Smith, Product Warranties § 4.03 [2] [1984].) A much-quoted turn-of-the-century case held that: "It is elemen *840 tary that, in order to entitle the plaintiff to maintain an action for breach of an express warranty, it must be established that the warranty was relied on.” (Crocker Wheeler Elec. Co. v Johns-Pratt Co., 29 App Div 300, 302, affd 164 NY 593.) However, examination of the New York cases which hold reliance to be a necessary element of an action for breach of warranty reveals that those cases use the doctrine to refer to situations where no warranty was made, where the warranty was not communicated to the plaintiff, or where the warranty was not breached. (See, e.g., Ainger v Michigan Gen. Corp., 476 F Supp 1209, 1226, affd on other grounds 632 F2d 1025, citing Ellen v Heacock, 247 App Div 476; Lewitus v Brown & Seccomb, 228 App Div 146; Friedman v Medtronic, Inc., 42 AD2d 185; Rowe v Van Denburg, 270 App Div 1054, affd 296 NY 803.) There does not appear to be a New York decision which requires reliance in a situation where the existence of an express warranty in a contract is conceded by both parties, thus rendering the presence or absence of "reliance” a decisive factor on the issue of liability. On the contrary, one recent decision implies that reliance need not be proved when an express warranty exists. (See, Neydavood v Zorzy, 123 AD2d 847 [2d Dept 1986].)
This court declines to require a finding of reliance to permit recovery for breach of the warranties in the contract.

 As noted above, this cause of action was dismissed by the Appellate Division. (See, CPC Intl. v McKesson Corp., 120 AD2d 221, 229-230.)