OPINION OF THE COURT
Franklin T. Russell, J.
Plaintiff brings this action in Small Claims Court asking for the recovery of the sum of $254.63, alleging that a licensed veterinarian determined that a dog purchased by plaintiff from defendant was unfit for purchase under article 35-B of the General Business Law. The parties presented their testimony and evidence before the Honorable Franklin T. Russell, Town Justice of the Town of Arcadia, on July 14, 1989.
Plaintiff purchased the dog on or about March 1, 1989 for *454 the sum of $400. At the time of purchase, defendant, who is self-employed as a farrier, gave a five-day guarantee to plaintiff, the substance of the guarantee being that if a veterinarian examined the animal during those five days and found anything wrong with the animal, the animal could be returned to defendant and plaintiff would have her moneys refunded. Plaintiff testified that she took the animal to a veterinarian within the five days and was told that the animal had a urinary infection. Plaintiff advised defendant of the veterinarian’s finding, but felt it would be a minor illness and elected to keep the animal. (This initial finding was not certified to defendant at this time, as required by General Business Law art 35-B.) Later, and in April, plaintiff learned from the veterinarian that the urinary infection was a bit more serious, whereupon plaintiff obtained the appropriate certification from the veterinarian, setting forth the diagnosis within the 14 days of sale, and contacted defendant requesting reimbursement under section 742 (1) (c) of the General Business Law.
Section 742 of the General Business Law provides, in applicable parts, as follows:
"1. If, within fourteen days following the sale of an animal subject to this article [dog or cat], a veterinarian of the consumer’s choosing, licensed by a state certifies such animal to be unfit for purchase due to illness, a congenital malformation which adversely affects the health of the animal, or the presence of symptoms of a contagious or infectious disease, the pet dealer shall afford the consumer the right to choose one of the following options * * *
"(c) The right to retain the animal and to receive reimbursement from a pet dealer for veterinary services from a licensed veterinarian of the consumer’s choosing, for the purpose of curing or attempting to cure the animal. The reasonable value of reimbursable services rendered to cure or attempting to cure the animal shall not exceed the purchase price of the animal. * * * Such reimbursement shall not include the costs of initial veterinary examination fees and diagnostic fees not directly related to the veterinarian’s certification that the animal is unfit for purchase pursuant to this section. * * *
"(2) The refund and/or reimbursement required by subdivision one of this section shall be made by the pet dealer not later than ten business days following receipt of a signed veterinary certification as herein required. Such certification *455 shall be presented to the pet dealer not later than three business days following receipt thereof by the consumer. * * *
"5. Nothing in this section shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law.”
Under article 35-B, § 741 (3) of the General Business Law defines "pet dealer” as "any person * * * which in the ordinary course of business engages in the sale of more than one litter of animals per year for profit to the public. Such definition shall include breeders of animals who sell animals directly to a consumer”.
Defendant testified that this was the first litter (seven puppies) and that she had sold all seven puppies. There was no testimony by either party that there were any subsequent litters.
Plaintiffs cause of action under article 35-B of the General Business Law fails as follows:
1. Defendant is not a "pet dealer” as defined by section 741 (3) of the General Business Law. The statute provides that for a person to be a "pet dealer”, that person must sell more than one litter of animals per year. There is no testimony to indicate that this defendant sold other than one litter. The statutory definition includes "breeders of animals who sell animals directly to a consumer” whereupon one might endeavor to argue that defendant is a "breeder”.
Article 35-B of the General Business Law became effective on January 1, 1989. This court could find no interpretations of that law upon which to test the instant set of facts and the intended legislative definition of the provision relating to breeders. The court, thus, made inquiry from the office of the sponsor of the legislation in the Assembly and was advised that, in the context of this legislation, a "breeder” is one who breeds and sells more than one litter of animals per year. "Breeder” was to be included within the ambit of the preceding sentence in the statute. This court was advised that the requirement that a "breeder” sell more than one litter was confirmed with the counsel for the Department of Agriculture and Markets. The court was further advised that the legislation was intended to cover those who sell animals to the consumer, whether they are a breeder or not. Specifically, the legislation did not intend to cover those persons whose pet might, by chance, have a litter and the owner would sell the offspring on a one-time basis.
*456 2. Subdivision (2) requires that the "certification shall be presented to the pet dealer not later than three business days following receipt thereof by the consumer.” Plaintiff introduced the certification, dated May 13, 1989, and testified that it was never presented to or shown to defendant until the moment of this hearing.
Article 35-B specifically does not limit plaintiff to a cause of action under its provisions. (General Business Law § 742 [5].) As such, the court examined express and implied warranties for the sale of goods under the Uniform Commercial Code. The dog is "goods” as defined by section 2-105 of the Uniform Commercial Code. (See, Dempsey v Rosenthal, 121 Misc 2d 612.)
Express warranties are set forth in section 2-313 (1) (a) of the Uniform Commercial Code. Particularly, an express warranty by the seller is created by "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain” (emphasis added).
It is a question of fact as to what representations induce the buyer to enter into the contract with the seller. "In actual practice affirmations. of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.” (See, UCC 2-313, Comment 3.) Where, as in the instant case, existence of the express warranty is conceded by both parties, a finding of reliance to permit recovery is not required. (See, CPC Intl. v McKesson Corp., 134 Misc 2d 834, 840, citing Neydavood v Zorzy, 123 AD2d 847.)
In the instant case, plaintiff took the dog to a veterinarian within the five days covered by defendant’s warranty, had the dog examined and advised defendant that the dog had a urinary infection. The substance, however, of the express warranty was that plaintiff could return the dog for a refund of the purchase price if there was anything wrong with it. Plaintiff declined to return the dog. As such, plaintiff cannot seek recovery under this express warranty. While one might argue that the more serious diagnosis in April was related to the diagnosis within the five-day warranty period, the plaintiff still did not want to return the dog for a refund, which was the express warranty offered by defendant. There was no testimony that defendant’s five-day guarantee carried any *457 other relief than the return of the animal and refund of the purchase price.
As to implied warranties under the Code, the court examined section 2-314, the implied warranty of merchantability, which is found not applicable, as the goods were not sold by a "merchant”, as such term is defined in UCC 2-104 (1): "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.”
Defendant is not a "person who deals in goods of the kind or otherwise by [her] occupation holds [herself] out as having knowledge or skill peculiar to the practices or goods involved in the transaction”. While the merchant question can only be answered by the facts of each particular case, and while it would appear that great latitude can be given in an interpretation of a business, the facts remain that defendant engaged in the sale of no more than one litter of animals to the public. As this court will not ascribe such merchant status to defendant, section 2-314 of the Uniform Commercial Code is inapplicable.
In conclusion, and after due deliberation upon the testimony and evidence presented to this court, this court does not find any cause of action under which plaintiff may seek recovery. Clearly plaintiff has not complied with the procedures set forth under article 35-B of the General Business Law; defendant is not a merchant so as to give plaintiff any relief under UCC 2-314; plaintiff has elected not to comply with the terms of the express warranty and, thus, cannot seek recovery under UCC 2-313. Therefore, the complaint of plaintiff is dismissed.