Bellacosa, J.
(dissenting). The issue is whether a buyer may sue a seller, after consummating a business transaction, for breach of an express warranty on which the buyer chose not to rely. The holding discards reliance as a necessary element to maintain an action for breach of an express warranty. Predictability and reliability with respect to commercial transactions, fostered by 90 years of precedent, are thus sacrificed. I respectfully dissent and would affirm the order of the Appellate Division unanimously affirming Supreme Court’s application of the sound and well-settled rule.
Plaintiff CBS contracted to purchase defendant Ziff-Davis’s *507 consumer magazine group pursuant to an Asset Purchase Agreement (APA). CBS specifically negotiated the right to rely on its own accountant’s representations in assessing the validity of the financial information which had been, and would be, provided to CBS by Ziff-Davis (§ 5.1 of the APA). Given the factual and fiscal complexity of this $362,500,000 acquisition, CBS chose to rely on its own investigation. What the CBS inspectors found in the Ziff-Davis books differed significantly from the financial picture the seller had painted. CBS notified Ziff-Davis of the discrepancies by letter on January 31, 1985, four days before the closing date. Despite its protest to the contrary, it had a contractual right under section 6.1 (a) of the APA to avert the closing if "all representations and warranties of Seller to Buyer” were not true on the closing date. Clearly then, CBS chose to rely on the results of its own investigation and made a business judgment to consummate the purchase rather than cancel the deal. It took the business risk of a big deal and tried by this subsequent litigation to mitigate whatever risk, if any, inured from that choice; in other words, CBS wanted to have its cake and eat it, too.
Supreme Court determined CBS did not rely on the ZiffDavis warranties. The Appellate Division made the same determination and the nonreliance is acknowledged by the majority (majority opn, at 499). The reliance element is thus unnecessarily excised as a matter of law from the legal proposition governing and defining the cause of action. If I am "missing the point” (majority opn, at 506, n 5), I believe it is because that is where the appellant’s argument and the state of the law have led me.
Part of CBS’s argument is that it should prevail because the closing day letter purports to reserve its rights as to the ZiffDavis warranties and section 8.1 of the APA purports to be a kind of nonmerger survival clause. On a sui generis contract basis therefore, without affecting the traditional reliance element of the cause of action, this argument is enticing. Nevertheless, I conclude — and the majority apparently agrees in this respect — that the argument is not dispositive. The warranties given to CBS created a right to rely on the financial data as part of the sales agreement, not a right not to rely on them, then consummate the deal and then sue on them besides. These aspects of the agreement, therefore, merely manifested the parties’ intent not to allow the closing to operate as a waiver of CBS’s right to rely — a right which was surrendered before the closing. If this issue were dispositive, it *508 would render the case and the contract entirely sui generis and there would be no need to address or alter the longstanding test with its reliance element. However, the court confronts and decides the broader issue, and on that we see and understand the case all too well in a fundamentally different way.
"It is elementary that, in order to entitle the plaintiff to maintain an action for breach of an express warranty, it must be established that the warranty was relied on.” (CrockerWheeler Elec. Co. v Johns-Pratt Co., 29 App Div 300, 302, affd 164 NY 593.) This plain language proposition has been recognized by this court and by the Appellate Division (see, Randy Knitwear v American Cyanamid Co., 11 NY2d 5, 9, 11, 15-16; see also, County Trust Co. v Pilmer Edsel, Inc., 14 NY2d 617, 621 [Burke, J., dissenting]; see, Butler v Caldwell & Cook, 122 AD2d 559, 560, lv denied 73 NY2d 709, appeal dismissed 73 NY2d 849; Scaringe v Holstein, 103 AD2d 880; Zucker v Siegel, 54 AD2d 979; Friedman v Medtronic, Inc., 42 AD2d 185, 190; see also, Heilman v Kirschner, 191 NYS 202 [App Term, Lehman, J.]). The majority declares the oft-quoted principle of Crocker-Wheeler "is not to be followed” (majority opn, at 505, n 3), based in part on a dormant tort/contract categorical bifurcation drawn largely from Ainger v Michigan Gen. Corp. (476 F Supp 1209). Also, part of the justification for this departure from stare decisis in the field of common-law commercial transactions — where the burden for change is very high — is Professor Williston’s "criticism” of Crocker-Wheeler. Examination of the complete section of the quoted text, however, discloses a significant qualification: "[I]t is generally and rightly held that inspection by the buyer does not excuse the seller from liability for * * * an express warranty, if the difference between the goods and the description was not detected” (8 Williston, Contracts § 973, at 501 [3d ed] [nn omitted; emphasis added]). "The difference” was definitively detected here by CBS pursuant to its express contractual right to personally assess the financial data.
In exchange for the long-standing, well-regarded and well-founded rule, New York law is subordinated to a theory advanced in Ainger v Michigan Gen. Corp. (476 F Supp, supra, at 1226). Among the problems of this approach, however, is that in affirming Ainger the Court of Appeals for the Second Circuit emphasized the limited impact of the District Court’s categorical discussion of the precise issue before us. After stating that the District Court Judge’s "finding of reliance *509 made a discussion of New York law unnecessary,” the Second Circuit said "[b]ecause there was reliance in this case, we will not speculate how the New York courts would decide a case in which there was none.” (Ainger v Michigan Gen. Corp., 632 F2d 1025, 1026, n 1.) The reliance on CPC Intl. v McKesson Corp. (134 Misc 2d 834) also seems misplaced. Again, the trial court in that case extensively discussed the reliance question. However, the appellate courts in an entirely different procedural review significantly minimized the discussion of the pertinent subject matter (see, CPC Intl. v McKesson Corp., 70 NY2d 268, 285 ["plaintiff, in contracting to purchase (defendant’s corporation), relied solely on the warranties”], 120 AD2d 221, 229 ["plaintiff relied solely upon the express warranties”]). Lack of reliance, therefore, was not part of the holdings in Ainger or CPC, even at their trial level citations by the majority. Yet those cases are accorded significant deference on the critical issue and they override superior longer-standing sources.
Finally, while I agree that analogy to the Uniform Commercial Code is "instructive” (majority opn, at 506, n 4), I believe the directly on-point express warranty section, UCC 2-313, emphasizes the need to stand by our precedents and thus affirm. Official comment 3 of that section indicates that were this a transaction governed by the Uniform Commercial Code, CBS’s nonreliance would take the seller’s warranties out of the agreement, especially after a buyer consummates the deal with full knowledge and with open disagreement concerning key financial data (UCC 2-313, comment 3; 1 White and Summers, Uniform Commercial Code § 9-5, at 450-451 [Practitioner’s 3d ed]).
Thus, we are presented with no binding or persuasive authorities sufficient to warrant overturning a venerable rule of the kind used especially in the commercial world to reliably order affairs in such a way as to reasonably avoid litigation (see, Cardozo, Selected Writings of Benjamin Nathan Cardozo, The Growth of the Law, at 236 ["In this department of activity (commercial law), the current axiology still places stability and certainty in the forefront of the virtues.”]). Allowing CBS to consummate the deal, and then sue on warranted financial data it personally investigated and verified as wrong beforehand, unsettles the finality, "stability and certainty” of commercial transactions and business relationships.
*510 CBS chose — for business reasons it knows best — to complete its significant acquisition at the impressively high agreed price with its cyclopean eye wide open. That tips the scales in favor of retaining and applying the traditional rule requiring a reliance element to sue for breach of warranty.
I would affirm the order in its entirety and leave the law where it was and the parties where they put themselves.
Judges Simons, Alexander and Titone concur with Judge Hancock, Jr.; Judge Bellacosa dissents in part and votes to affirm in a separate opinion; Chief Judge Wachtler and Judge Kaye taking no part.
Order modified, etc.