## CROCKER WHEELER ELECTRIC CO. v. JOHNS-PRATT CO.

(Supreme Court, Appellate Division, First Department.    May 6, 1898.)

1. SALE—BREACH OF WARRANTY.
   In order to maintain an action for breach of an express warranty, the plaintiff must establish that the warranty was relied on.

2. SAME—IMPLIED WARRANTY—EVIDENCE.
   In an action based, in one aspect, upon a breach of an alleged implied warranty, in a contract by defendant to supply certain material known as "Vulcabeston," it appeared that the existence of such warranty, if any, must be supported by some theory of a sale by sample; but it was established that the samples were shown merely to indicate quality (in which respect there had been no default), and not form, or fitness for an intended·use.  ·Held, that no implied warranty was made out.

Appeal from trial term.

Action by the Crocker Wheeler Electric Company against the Johns-Pratt Company.    From·a judgment dismissing the complaint, plaintiff appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

E. B. Hill, for appellant.

W. A. Jenner, for respondent.

PATTERSON, J.    The appellant's counsel insists that the complaint in this action contains allegations which constitute a cause of action for the breach of either an express or an implied warranty. Assuming for the purposes of the appeal that the complaint is susceptible of that construction, we are of opinion that the trial judge was right in granting a nonsuit, for the proof was altogether insufficient to sustain the action in either aspect.    It is unnecessary to pass upon the relations of the plaintiff and its predecessor with the defendant or the H. W. Johns Manufacturing Company.    We take it for granted that whatever contract relations existed between any of the parties with respect to the subject-matter of this suit, if there is any responsibility at all for breaches of contract or of warranty, it is with this defendant.

Concerning an express warranty, the evidence shows that the only representations really made related to the quality of the substance the defendant offered to supply to the plaintiff.    It was a material .made by the defendant, and which it sought to have the plaintiff and its predecessor adopt as an insulator in electrical machinery.    The representation was that the material called "Vulcabeston" was made of the best para rubber and selected asbestos fiber, and that it was practically a perfect insulating material, fitted for use in such machinery as was made by the plaintiff or its predecessor.    There is no proof in the case that the material supplied by the defendant was not made of the best para rubber or selected asbestos fiber.    There is proof that, so far as the material was concerned, it was such an insulator as it was represented to be.    That proof is furnished by the plaintiff.    Its predecessor or itself experimented with the material, specimens of which were furnished by the defendant or its agent, and it is admitted

that it answered the representation. If there were any warranty, it was simply as to quality; but if, by any construction, it could be extended to use, then it is apparent that, so far as any statements are concerned, they were not relied upon by the plaintiff or its predecessor; for, before making any contract, the officers of the plaintiff or its predecessor satisfied themselves by their own investigation or experiment that the representations made respecting the material and its sufficiency for their purposes were true. It is elementary that, in order to entitle the plaintiff to maintain an action for breach of an express warranty, it must be established that the warranty was relied on. Such was not the case here.

The claim to recover for the breach of an implied warranty is equally untenable. There is nothing in the proofs to show any other basis upon which to rest an implied warranty than that possibly of a sale by sample. Without reference to the inconsistency of the claims, it is enough to say that the only real proof of the exhibition of any sample tendered or received as such relates to the original sheets of vulcabeston. Nothing is plainer in the case than that the material subsequently furnished by the defendant was not intended to accord with those samples, except so far as the quality of the material was concerned. In the manufactured form there was to be no exact correspondence of the article furnished with so-called "sample sheets." Respecting the form in which the sheets delivered under the plaintiff's orders were made, there was no breach of an implied warranty. If it is contended that samples of thin sheets were sent and adopted, and made a standard of subsequent manufacture, that contention must fail, because it is obvious that everything that was done by the defendant concerning the manufacture of thinner sheets than those originally exhibited was only an attempt on the part of the defendant by experiment to make sheets of vulcabeston of such a thinness as would suit the plaintiff for use in connection with the armatures of the electrical machines manufactured by it. Neither the testimony nor the correspondence establishes in any way a state of facts from which an inference even would be authorized that all the goods ordered by the plaintiff were to correspond with any particular thin sheets of vulcabeston exhibited by the defendant to the plaintiff. On the contrary, the correspondence indicates that the plaintiff thoroughly understood that the defendant was more than doubtful of its ability to reduce the thickness of sheets of vulcabeston, so that they might be used in the plaintiff's peculiar manufactures; and it would seem that the defendant was induced by the persuasion of the plaintiff to continue experiments with reference to the reduction of the thickness of the sheets to suit the purposes of the plaintiff, and there was an agreement made by which portions of sheets furnished not suitable for use by the plaintiff should be returned and credited upon the contract price,—that is, the plaintiff should select and use what it wanted, and return the rest. All the dealing and all the correspondence between the parties is susceptible only of the construction that there was no implied warranty as to the fitness of the goods supplied under the plaintiff's orders. As to an implied warranty of the quality of the material, it is said that there were ingredients in the sheets of foreign

substances which could not be detected by inspection; and which prevented the vulcabeston sheets being electrical insulators.   It is said that plumbago was present.   There is not one word of evidence to support that claim.   It is also said that there were small microscopic particles of magnatite which were so arranged in the sheets that they acted as conductors, and caused the grounding of the electrical current passing through the armatures, and that there was a breach of an implied warranty as to quality.   But it is uncontradicted that these infinitesimal particles of magnatite form part of the natural product called "asbestos," and exist in the purest asbestos; and the inference seems to be inevitable that the insufficiency of the sheets used by the plaintiff was in consequence of the thinness of the sheets, and not of the constituents of the material of which those sheets were composed; for, when the thicker sheets were originally used, there was no evidence of their being insufficient as insulators, but, on the contrary, they were sufficient.   We think, therefore, there was no basis of fact upon which this action could be maintained for a breach of warranty, and that the court below properly dismissed the complaint

The judgment appealed from must be affirmed, with costs.   All concur.