LOUIS FRIEDMAN, Respondent, v. MEDTRONIC, INC., Appellant, et al., Defendant.

Second Department, July 9, 1973.

186

*John J. Corcoran* for appellant.

*Goldweber & Hershkowitz* (*Max Goldweber* and *Marcia Berger Hershkowitz* of counsel), for respondent.

LATHAM, J. On July 10, 1963, a Medtronic model 58-60 implantable pacemaker was surgically placed inside the plaintiff's body. The purpose of the pacemaker was to provide an electrical charge to the plaintiff's heart to enable the heart to beat at a regular rate. In September of 1963 the pacemaker ceased to trigger heart contractions. X rays showed that there was a break in the cardiac electro lead approximately at the point the lead entered the heart muscle. The problem was corrected through operative procedure whereby the pacemaker was changed from bi-polar to uni-polar operation, a change contemplated by the pacemaker's design.

On April 2, 1964 the original pacemaker was removed and a new one inserted. The doctor who removed the first pacemaker

had stated in the hospital record that the failure of this pacemaker to supply current to the heart was due to fibrosis, a formation of fibrous tissue around the electrode.

On November 17, 1964 the plaintiff was readmitted to the hospital. The second pacemaker was supplying an accelerated beat. It was removed and a third pacemaker was implanted.

The plaintiff brought this action against the manufacturer of the pacemakers and the surgeon who had implanted the first pacemaker. The sole cause of action against the surgeon, sounding in negligence, was discontinued during the trial. A cause of action against the manufacturer, the appellant, based on its alleged negligence, was dismissed at the close of the plaintiff's case. The action against the appellant was submitted to the jury only upon the theory of breach of implied and express warranties. The jury returned a general verdict in the plaintiff's favor in the amount of $23,000. The appellant argues that the plaintiff has not made out a prima facie case for breach of warranty. For reasons stated beyond, we reverse the judgment and grant a new trial.

Our initial consideration concerns the issue of implied warranties. The first occurrence complained of is the break of the electrode near its tip, for which corrective surgery was performed on September 15, 1963. The evidence at the trial showed that there were at least three possible causes for the breaking of the electrode. There was no testimony from which the jury could have inferred that one possible cause was more likely to have occurred than the others. Since each of the possibilities was just as likely to have occurred as any other, the jury would only have been justified in finding for the plaintiff if the appellant had impliedly warranted against the occurrence of all three. A jury cannot speculate upon probabilities (*Blaikie* v. *Post,* 137 App. Div. 648, 651). " Where there are several possible theories to explain the happening of an event, the evidence must be such as to have selective application as to the one adopted by the factfinder; two or more plausible explanations as to how an event happened or what produced it remain conjectures only, where the evidence is without selective application to any one of them " (30 Am. Jur. 2d, Evidence, § 1081, p. 229).

The first possibility concerns a complication that arose during the initial operation of implantation. One of the electrodes was shifted twice by the surgeon during this operation in order to secure better position. In doing this shifting, the surgeon was guided by feel, his vision being obscured by a thick layer of epicardial fat.

On the record before us, it is clear that submission of this causative possibility to the jury as a basis for breach of warranty was erroneous. As to implied warranties of merchantability and fitness, the issue is whether the pacemaker was fit for the ordinary purpose for which pacemakers were used (merchantability) or whether it was fit for the particular purpose for which it was bought. In this case, the general purpose and specific purpose seem to be identical.

In determining the issue, the basic question is whether the operative contingency encountered by the surgeon was reasonably foreseeable by the manufacturer. However, a jury should not be called upon to answer this question without the benefit of expert proof (*Curtis* v. *Gano*, 26 N. Y. 426; *Finn* v. *Cassidy*, 165 N. Y. 584). A pacemaker is a relatively new exotic instrument, knowledge of which is peculiar to the medical profession and its supportive science. Where the product is exotic, newly on the market place, and usable only through the intervention of a highly trained specialist, a finding by the jury, without the benefit of expert opinion as to the expectations of the professional community in purchasing the product, would be highly speculative and presumptuous. The situation is analogous to that where a jury of laymen is asked in a medical malpractice case to determine the issue of negligence simply as an inference from the circumstances (cf. *Pipers* v. *Rosenow*, 39 A D 2d 240). Without medical testimony as to whether the inability of the electrode to withstand kinkage caused by a doctor's excessive manipulation constituted a defect in the electrode, the jury would have no ground upon which to base a finding of breach of warranty. Yet, there was no testimony in the record to this effect. That the breakage was caused by the doctor's manipulation was left as a possibility without further explanation as to whether this possibility implied that the product was thereby defective.

The same rationale applies to the second possibility. The plaintiff's own expert testified that sometimes an electrode will shear just from the force of the heart muscle. Yet, there was no testimony to show whether this would indicate that the unit was initially unfit for use. In fact, the plaintiff's expert testified that the break could occur without any defect in the electrode.

The third possibility was that damage occurred to the pacemaker during its transfer from Montefiore Hospital to Long Island College Hospital, the latter hospital being where the implantation took place. The question is therefore raised as to whether the appellant is responsible if such damage occurred. The plaintiff was billed directly by the appellant for the pace-

maker. At the trial, the parties stipulated that the pacemaker was " consigned " to Montefiore Hospital and subsequently " requisitioned " to Long Island College Hospital. During the course of the trial, the plaintiff's counsel stated that the full nature of the transaction would be proved. However, no further evidence concerning the transaction was ever introduced. Upon this incomplete showing, there was no way that the jury could have fixed responsibility had they determined that the defect, if there was one, was caused after the pacemaker left the appellant's hands.

Thus, it is clear that any finding by the jury that the first occurrence of pacemaker failure was due to breach of warranty could only have been based on conjecture.

The second occurrence of apparent pacemaker failure occurred in April of 1964, when the first pacemaker failed to penetrate its current to the plaintiff's heart. Although the jury may reasonably have found that the failure was due to fibrosis, there was no proof in the record that the appellant knew or should have known that fibrosis could have caused the pacemaker to cease proper functioning. Yet, the trial court charged the jury that it was the duty of the appellant to warn of this possibility. Absent any proof that the appellant had or should have had the requisite knowledge, the charge was erroneous, since it was not based on any proven fact (*Lifton* v. *Title Guar. & Trust Co.,* 263 App. Div. 3).

Additionally, the jury was allowed to make a determination that there was a breach of warranty in that the second occurrence was due to battery failure. However, there was absolutely no proof of battery failure in this case. The only evidence concerning the specific battery was that of the appellant's expert employee, who testified that subsequent tests showed the battery to still have 50% of its life. The only testimony on battery failure was that of the plaintiff's expert, who had not read the operative notes prior to her testimony, who did not have knowledge of the tests performed subsequent to the pacemaker's removal, and whose testimony was purely conjectural, based as it was on hypothetical facts never proved. It was error to allow the jury to speculate on battery failure, since there was not one scintilla of evidence to support this theory (*Pratt* v. *Ogden,* 34 N. Y. 20).

The third occurrence of pacemaker failure involved the supplying of an accelerated beat by the second pacemaker. This is a situation commonly known as a " runaway " pacemaker. As to this failure, the plaintiff made out a prima facie case of

breach of implied warranty, since there was a circumstantial showing that the problem was internally caused. The burden was shifted to the appellant to come forward with rebutting evidence. However, even though the jury may reasonably have found that there was a breach of warranty as to the runaway pacemaker, reversal is mandated because the record does not disclose whether the jury found the appellant liable on the first two occurrences of failure (*Phillipson* v. *Ninno*, 233 N. Y. 223).

We turn now to the issue of express warranties. The cause of action for breach of express warranty rested upon certain literature put out by the appellant at the time it placed the pacemakers on the market. In charging the jury, the trial court instructed them that the literature contained express warranties as a matter of law. Yet, the trial court did not state what those warranties were. Thus, the jury was left with no choice but to grant a verdict for the plaintiff without knowing whether the warranties related to the actual occurrences of failure.

In order for an express warranty to exist, there must be an affirmation of fact or promise by the seller, the natural tendency of which is to induce the buyer to purchase. Thus, for a buyer to recover for breach of express warranty, he must show that the warranty was relied on (*Crocker-Wheeler Elec. Co.* v. *Johns-Pratt Co.*, 29 App. Div. 300, affd. 164 N. Y. 593; 47 N. Y. Jur., Products Liability, § 69). In charging that there were express warranties as a matter of law, the trial court impliedly charged that there was reliance as a matter of law. This charge was erroneous. The plaintiff did not read the literature. And, although he may be considered an agent of the plaintiff for purposes of reliance, the operating surgeon testified that he did not remember whether he had read the literature introduced into evidence. Therefore, the question of reliance should properly have been left for the jury.

Additionally, a reading of the literature, coupled with what little other evidence is contained in the record, shows that the statements in the literature were not susceptible to interpretation as a matter of law. For example, the literature refers to the long life of the pacemaker and the plaintiff's expert testified to the fact that the appellant had promised a life of about three years. However, both the literature and the plaintiff's expert referred to longevity in connection with the battery. A reasonable interpretation would be that any express warranty as to longevity was limited to battery life. Since there was absolutely no evidence of battery failure in connection with any of the three occurrences, such a warranty would be irrelevant.

Another example from the literature is the statement that there has never been a reported case of failure of the unit due to seepage of body fluids or breakage of wires caused by component motion. A jury could reasonably have found that the wire tip of the electrode may or may not have broken beyond the termination of the seal, since the tip cannot be sealed where it goes into the myocardium. Therefore, even if the sealing aspect of this statement be construed as an express warranty, it might be irrelevant. It would also be reasonable to interpret the literature so as to conclude that the reference to breakage of " wires " does not refer to the electrode, since the literature does not refer to the electrode as a wire, but as an electrode, and the term " wires " is used in its normal sense as an electrical connection between components. Finally, the jury could have reasonably found that the statement refers to breakage caused by component motion and not by the previously discussed possibility of breakage caused by stress being put on the electrode tip itself.

Since the literature was obviously intended primarily for the medical profession, the question of whether the statements constituted an affirmation of fact tending to induce purchase of the pacemaker is a question which can only be answered with the help of expert medical opinion, of which there was none of relevance in the record. The statements in the literature read not as affirmation of fact, but as statements of what has been the experience in the past. These statements are coupled with the proviso that " it must be realized that no amount of testing can completely substitute for evaluation by actual use." Additionally, alternative procedures for a change in circuitry in case of pacemaker failure are set forth.

There are several other ambiguities created by the combination of the wording of the literature and the paucity of proof at the trial. However, they need not be particularized, since their effect is redundant. The basic fact to be gleaned from these ambiguities is that the question of whether there were express warranties was susceptible to more than one answer. Therefore, it should not have been taken from the jury.

We also find merit to the appellant's contention that the overall charge to the jury was inadequate. A reading of the charge discloses a failure to instruct the jury on the applicable statutes and a failure to relate legal principles of law to the disputed facts. Under the circumstances, the jury was not given proper guidance to enable it to reach an intelligent verdict (*Green* v. *Downs,* 27 N Y 2d 205).

The judgment accordingly should be reversed, on the law, and a new trial granted, with costs to abide the event. The questions of fact have not been considered on this appeal.

HOPKINS, Acting P. J., GULOTTA, CHRIST and BRENNAN, JJ., concur.

Judgment of the Supreme Court, Kings County, entered July 27, 1972, reversed, on the law, and new trial granted, with costs to abide the event. The questions of fact have not been considered on this appeal.