632 F.2d 1025
 Arthur M. AINGER, George B. Davis, David Zentner, Walter
Weindenbaum, Edward Silvey and Samuel J. Campbell,
Plaintiffs-Appellants and Cross-Appellees,
v.
MICHIGAN GENERAL CORPORATION, Defendant-Appellee and Cross-Appellant.
 Nos. 939, 1060, Dockets 79-7675, 79-7711.
 United States Court of Appeals,
Second Circuit.
 Argued April 30, 1980.
Decided Oct. 6, 1980.
 
 Ralph L. Ellis, New York City (Shea & Gould, New York City, Steven R. Sutton, New York City, on brief), for plaintiffs-appellants and cross-appellees.
 John L. Amabile, New York City (Burns Jackson Miller Summit & Jacoby, Dumont Clarke IV, New York City, on brief), for defendant-appellee and cross-appellant.
 Before LUMBARD, VAN GRAAFEILAND and KEARSE, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This action was brought by the sellers of a paperback book publishing company to recover $350,373, the unused balance of a portion of the purchase price retained by the purchaser as a reserve for unpaid taxes. Plaintiffs' right to this amount was undisputed. The purchaser, Michigan General Corporation, counterclaimed, however, alleging the breach of a warranty in the sales agreement and fraud associated with the breach. The case was tried before Judge Cannella without a jury in the United States District Court for the Southern District of New York. He awarded plaintiffs $424,445, the total amount of their claim plus interest, and allowed defendant a set-off of $69,023 as damages on its counterclaim, the net judgment against defendant being in the amount of $355,422. We affirm.
 
 
 2
 Because Judge Cannella's opinion, which is reported at 476 F.Supp. 1209, comprehensively reviews the facts, they will not be detailed here. The parties' differences center on a contract between plaintiffs' wholly-owned corporation and Donald Pendleton, the author of an extremely successful series of books, whose main character is known as "The Executioner". Prior to its purchase of plaintiffs' company, defendant knew that plaintiffs' written contract with Pendleton contained no terms vesting plaintiffs with ownership of The Executioner series or with any right or claim relating to its central character. Defendant did not know, however, that Pendleton intended to assert ownership of the series and had so advised plaintiffs. Defendant contends that plaintiffs' failure to inform it of this fact violated a provision in the sales agreement that "(s)eller is not involved in any litigation and has not been notified of any claims which could give rise to litigation ...."
 
 
 3
 Plaintiffs argue that defendant has no cause of action against them for either breach of warranty or misrepresentation. They say that under New York law an essential element of each of these causes of action is reliance by the purchaser on the seller's misstatement and that defendant's familiarity with the terms of the Pendleton contract precludes it from asserting reliance in this case. Defendant challenges plaintiffs' interpretation of New York law, asserting that recovery may be had in contract for a breach of warranty without a showing of reliance. The district court's finding that there was reliance, see 476 F.Supp. at 1231, makes it unnecessary for us to join this debate.[1]
 
 
 4
 Plaintiffs also contend that Pendleton's claim of ownership was in fact without basis and that accordingly there was no fraudulent scienter in their professed ignorance of a claim "which could give rise to litigation." However, plaintiffs did more than merely deny notice of Pendleton's claim. Among other things, they misinformed defendant in writing that Pendleton "accepts the fact that all of the books in 'The Executioner' series are the property of the publisher, and not the author."
 
 
 5
 The district court did not err in holding that defendant was entitled to recover on its counterclaim for both fraud and breach of contract.
 
 
 6
 However, defendant's knowledge of the unfavorable terms in the Pendleton contract precluded it from recovering all the damages it sought. The district judge awarded defendant the legal expenses it incurred in litigating with Pendleton and another publisher with whom Pendleton had agreed to continue The Executioner series. The judge denied defendant's claims for lost profits on three books whose publication was enjoined during the litigation and for alleged lost profits and increased expenses resulting from the settlement agreement eventually reached with Pendleton.
 
 
 7
 Bearing in mind the wide latitude allowed a district judge in resolving the largely factual issue of damages, Harry Alter Co. v. Chrysler Corp., 285 F.2d 903, 907 (7th Cir. 1961), we find no error here. Despite plaintiffs' warranty to the contrary, Pendleton was making a claim of ownership which could and did give rise to litigation. Defendant was therefore entitled to recover its litigation expenses. Judge Cannella found that the three unpublished books could be published after the litigation terminated so that profits were only delayed, not lost. Defendant offered no evidence as to its damages resulting from the loss of use of these profits while publication was stayed. At the time the purchase was agreed upon, defendant knew that it would have to negotiate a new contract with Pendleton in order to protect its investment. Because The Executioner series was a successful one, defendant must have anticipated that the terms of the new agreement would be more favorable to Pendleton. Moreover, the district court found that the agreement provided offsetting advantages to the defendant in that it insured defendant of Pendleton's services and gave defendant effective control of The Executioner series.
 
 
 8
 The district judge also rejected, as inadequately proved, defendant's alternative claim that it was entitled to recover the difference in value between what it bargained for and what it received. Our review of the record leads us to the same conclusion.
 
 
 9
 The district court's findings had support in the evidence and were not clearly erroneous. The judgment is affirmed without costs to either party.
 
 
 
 [1]
 Plaintiffs cite cases such as Crocker-Wheeler Electric Co. v. Johns-Pratt Co., 29 App.Div. 300, 301-02, 51 N.Y.S. 793 (1898), aff'd, 164 N.Y. 593 (1900), and Friedman v. Medtronic, Inc., 42 App.Div.2d 185, 190, 345 N.Y.S.2d 637 (1973), in support of their argument that a buyer cannot recover for breach of an express warranty unless he first shows that he relied upon the warranty. Although Judge Cannella's finding of reliance made a discussion of New York law unnecessary, he nevertheless proceeded to distinguish the cases upon which plaintiffs relied by holding them inapplicable in common law contract actions on express warranty. See 476 F.Supp. at 1223-27. The law in this area is generally unsettled. Compare Land v. Roper Corp., 531 F.2d 445, 447-49 (10th Cir. 1976) with Glacier General Assurance Co. v. Casualty Indemnity Exchange, 435 F.Supp. 855, 860-61 (D. Mont. 1977). Because there was reliance in this case, we will not speculate how the New York courts would decide a case in which there was none