*498 OPINION OF THE COURT
Hancock, Jr., J.
A corporate buyer made a bid to purchase certain businesses based on financial information as to their profitability supplied by the seller. The bid was accepted and the parties entered into a binding bilateral contract for the sale which included, specifically, the seller’s express warranties as to the truthfulness of the previously supplied financial information. *499 Thereafter, pursuant to the purchase agreement, the buyer conducted its own investigation which led it to believe that the warranted information was untrue. The seller dismissed as meritless the buyer’s expressions of disbelief in the validity of the financial information and insisted that the sale go through as agreed. The closing took place with the mutual understanding that it would not in any way affect the previously asserted position of either party. Did the buyer’s manifested lack of belief in and reliance on the» truth of the warranted information prior to the closing relieve the seller of its obligations under the warranties? This is the central question presented in the breach of express warranty claim brought by CBS Inc. (CBS) against Ziff-Davis Publishing Co. (Ziff-Davis).[1] The courts below concluded that CBS’s lack of reliance on the warranted information was fatal to its breach of warranty claim and, accordingly, dismissed that cause of action on motion under CPLR 3211 (a) (7). We granted leave to appeal and, for reasons stated hereinafter, disagree with this conclusion and hold that the warranty claim should be reinstated.
I
The essential facts pleaded — assumed to be true for the purpose of the dismissal motion — are these. In September 1984, Goldman Sachs & Co., acting as Ziff-Davis’s investment banker and agent, solicited bids for the sale of the assets and businesses of 12 consumer magazines and 12 business publications. The offering circular, prepared by Goldman Sachs and Ziff-Davis, described Ziff-Davis’s financial condition and included operating income statements for the fiscal year ending July 31, 1984 prepared by Ziff-Davis’s accountant, Touche Ross & Co. Based on Ziff-Davis’s representations in the offering circular, CBS, on November 9, 1984 submitted a bid limited to the purchase of the 12 consumer magazines in the amount of $362,500,000. This was the highest bid.
On November 19, 1984 CBS and Ziff-Davis entered into a binding bilateral purchase agreement for the sale of the consumer magazine businesses for the price of $362,500,000. *500 Under section 3.5 of the purchase agreement, Ziff-Davis warranted that the audited income and expense report of the businesses for the 1984 fiscal year, which had been previously provided to CBS in the offering circular, had "been prepared in accordance with generally accepted accounting principles” (GAAP) and that the report "present[ed] fairly the items set forth”. Ziff-Davis agreed to furnish an interim income and expense report (Stub Report) of the businesses covering the period after the end of the 1984 fiscal year, and it warranted under section 3.6 that from July 31, 1984 until the closing, there had "not been any material adverse change in Seller’s business of publishing and distributing the Publications, taken as a whole”. Section 6.1 (a) provided that "all representations and warranties of Seller to Buyer shall be true and correct as of the time of the closing”, and in section 8.1, the parties agreed that all "representations and warranties * * * shall survive the closing, notwithstanding any investigation made by or on behalf of the other party.” In section 5.1 Ziff-Davis gave CBS permission to "make such investigation” of the magazine businesses being sold "as [it might] desire” and agreed to give CBS and its accountants reasonable access to the books and records pertaining thereto and to furnish such documents and information as might reasonably be requested.
Thereafter, on January 30, 1985 Ziff-Davis delivered the required Stub Report. In the interim, CBS, acting under section 5.1 of the purchase agreement, had performed its own "due diligence” examination of Ziff-Davis’s financial condition. Based on this examination and on reports by its accountant, Coopers & Lybrand, CBS discovered information causing it to believe that Ziff-Davis’s certified financial statements and other financial reports were not prepared according to GAAP and did not fairly depict Ziff-Davis’s financial condition.
In a January 31, 1985 letter, CBS wrote Ziff-Davis that, "[b]ased on the information and analysis provided [to it, CBS was] of the view that there [were] material misrepresentations in the financial statements provided [to CBS] by Touche Ross & Co., Goldman, Sachs & Co. and Ziff-Davis”. In response to this letter, Ziff-Davis advised CBS by letter dated February 4, 1985 that it "believe[d] that all conditions to the closing * * * were fulfilled”, that "there [was] no merit to the position taken by CBS in its [Jan. 31, 1985] letter” and that the financial statements were properly prepared and fairly presented Ziff-Davis’s financial condition. It also warned CBS that, since all conditions to closing were satisfied, closing was *501 required to be held that day, February 4, 1985, and that, if it "should fail to consummate the transactions as provided * * * Ziff-Davis intend[ed] to pursue all of its rights and remedies as provided by law. ” (Emphasis added.)
CBS responded to Ziff-Davis’s February 4, 1985 letter with its own February 4 letter, which Ziff-Davis accepted and agreed to. In its February 4 letter, CBS acknowledged that "a clear dispute” existed between the parties. It stated that it had decided to proceed with the deal because it had "spent considerable time, effort and money in complying with [its] obligations * * * and recogniz[ed] that [Ziff-Davis had] considerably more information available”. Accordingly, the parties agreed "to close [that day] on a mutual understanding that the decision to close, and the closing, [would] not constitute a waiver of any rights or defenses either of us may have” (emphasis added) under the purchase agreement. The deal was consummated on February 4.
CBS then brought this action claiming in its third cause of action[2] that Ziff-Davis had breached the warranties made as to the magazines’ profitability. Based on that breach, CBS alleged that "the price bid and the price paid by CBS were in excess of that which would have been bid and paid by CBS had Ziff-Davis not breached its representation and warranties.” Supreme Court granted Ziff-Davis’s motion to dismiss the breach of warranty cause of action because CBS alleged "it did not believe that the representations set forth in Paragraphs 3.5 and 3.6 of the contract of sale were true” and thus CBS did not satisfy "the law in New York [which] clearly requires that this reliance be alleged in a breach of warranty action.” Supreme Court also dismissed CBS’s fourth cause of action relating to an alleged breach of condition. The Appellate Division, First Department, unanimously affirmed for reasons stated by Supreme Court. There should be a modification so as to deny the dismissal motion with respect to the third cause of action for breach of warranties.
II
In addressing the central question whether the failure to plead reliance is fatal to CBS’s claim for breach of express warranties, it is necessary to examine the exact nature of the *502 missing element of reliance which Ziff-Davis contends is essential. This critical lack of reliance, according to Ziff-Davis, relates to CBS’s disbelief in the truth of the warranted financial information which resulted from its investigation after the signing of the agreement and prior to the date of closing. The reliance in question, it must be emphasized, does not relate to whether CBS relied on the submitted financial information in making its bid or relied on Ziff-Davis’s express warranties as to the validity of this information when CBS committed itself to buy the businesses by signing the purchase agreement containing the warranties.
Under Ziff-Davis’s theory, the reliance which is a necessary element for a claim of breach of express warranty is essentially that required for a tort action based on fraud or misrepresentation — i.e., a belief in the truth of the representations made in the express warranty and a change of position in reliance on that belief. Thus, because, prior to the closing of the contract on February 4, 1985, CBS demonstrated its lack of belief in the truth of the warranted financial information, it cannot have closed in reliance on it and its breach of warranty claim must fail. This is so, Ziff-Davis maintains, despite its unequivocal rejection of CBS’s expressions of its concern that the submitted financial reports contained errors, despite its insistence that the information it had submitted complied with the warranties and that there was "no merit” to CBS’s position, and despite its warnings of legal action if CBS did not go ahead with the closing. Ziff-Davis’s primary source for the proposition it urges — that a change of position in reliance on the truth of the warranted information is essential for a cause of action for breach of express warranty — is language found in older New York cases such as Crocker-Wheeler Elec. Co. v Johns-Pratt Co. (29 App Div 300, affd 164 NY 593).
CBS, on the other hand, maintains that the decisive question is whether it purchased the express warranties as bargained-for contractual terms that were part of the purchase agreement (see, e.g., Ainger v Michigan Gen. Corp., 476 F Supp 1209, 1225 [SD NY 1979], affd 632 F2d 1025 [2d Cir 1980]). It alleges that it did so and that, under these circumstances, the warranty provisions amounted to assurances of the existence of facts upon which CBS relied in committing itself to buy the consumer magazines. Ziff-Davis’s assurances of these facts, CBS contends, were the equivalent of promises by Ziff-Davis to indemnify CBS if the assurances proved unfounded. Thus, as continuing promises to indemnify, the express contractual *503 warranties did not lose their operative force when, prior to the closing, CBS formed a belief that the warranted financial information was in error. Indeed, CBS claims that it is precisely because of these warranties that it proceeded with the closing, despite its misgivings.
As authority for its position, CBS cites, inter alia, Ainger v Michigan Gen. Corp. (supra) and Judge Learned Hand’s definition of warranty as "an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past. ” (Metropolitan Coal Co. v Howard, 155 F2d 780, 784 [2d Cir 1946] [emphasis added]; see also, Groen v Tri-O-Inc., 667 P2d 598, 604 [Sup Ct Utah 1983]; Au v Au, 63 Haw 210, 263, 626 P2d 173, 179-180 [Sup Ct Haw 1981]; 1 Corbin on Contracts § 14; 17A CJS Contracts § 342, at 325.)
We believe that the analysis of the reliance requirement in actions for breach of express warranties adopted in Ainger v Michigan Gen. Corp. (supra) and urged by CBS here is correct. The critical question is not whether the buyer believed in the truth of the warranted information, as Ziff-Davis would have it, but "whether [it] believed [it] was purchasing the [seller’s] promise [as to its truth].” (Ainger v Michigan Gen. Corp., supra, at 1225; see, e.g., Overstreet v Norden Labs., 669 F2d 1286, 1291 [6th Cir 1982]; Pritchard v Liggett & Myers Tobacco Co., 350 F2d 479, 483 [3d Cir 1965], cert denied 382 US 987, opn amended 370 F2d 95 [3d Cir 1966], cert denied 386 US 1009; CPC Inti, v McKesson Corp., 134 Misc 2d 834 [Sup Ct, NY County].) This view of "reliance” — i.e., as requiring no more than reliance on the express warranty as being a part of the bargain between the parties — reflects the prevailing perception of an action for breach of express warranty as one that is no longer grounded in tort, but essentially in contract. (See, Ainger v Michigan Gen. Corp., supra, at 1225; Randy Knitwear v American Cyanamid Co., 11 NY2d 5, 10-11, n 2; see, 8 Williston, Contracts § 970, at 485-488 [3d ed].) The express warranty is as much a part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled. The right to indemnification *504 depends only on establishing that the warranty was breached (see, Glacier Gen. Assur. Co. v Casualty Indem. Exch., 435 F Supp 855, 860 [D Mont 1977] [citing Metropolitan Coal Co. v Howard, supra]; 1 Corbin, Contracts § 14).
If, as is allegedly the case here, the buyer has purchased the seller’s promise as to the existence of the warranted facts, the seller should not be relieved of responsibility because the buyer, after agreeing to make the purchase, forms doubts as to the existence of those facts (see, Ainger v Metropolitan Gen. Corp., supra, at 1234; see also, Metropolitan Coal Co. v Howard, supra, at 781; Glacier Gen. Assur. Co. v Casualty Indem. Exch., 435 F Supp 855, 860-861, supra; 8 Williston, Contracts § 973 [3d ed]). Stated otherwise, the fact that the buyer has questioned the seller’s ability to perform as promised should not relieve the seller of his obligations under the express warranties when he thereafter undertakes to render the promised performance.
The cases which Ziff-Davis cites as authority for the application of its tort-action type of reliance requirement do not support the proposition it urges. None are similar to the case at bar where the warranties sued on are bargained-for terms in a binding bilateral purchase contract. In most, the basis for the decision was a factor other than the buyer’s lack of reliance such as, for example, insufficient proof of the existence of the alleged express warranty (see, e.g., Scaringe v Holstein, 103 AD2d 880, 881; Friedman v Medtronic, 42 AD2d 185, 190; Crocker-Wheeler Elec. Co. v Johns-Pratt Co., 29 App Div 300, affd 164 NY 593, supra; Ellen v Heacock, 247 App Div 476, 477) or that the warranty sued upon was expressly excluded by terms of the contract (see, e.g., Caribbean Atl. Airlines v Rolls-Royce Ltd., 39 AD2d 673, affd without opn 31 NY2d 798) or that there was insufficient proof that the express warranty had been breached (see, e.g., 200 E. End Ave. Corp. v General Elec. Co., 5 AD2d 415, affd without opn 6 NY2d 731); and some involve implied rather than express warranties (see, e.g., Mittens & Sons v Vladich, 28 AD2d 1045, affd without opn 23 NY2d 998).
Ziff-Davis repeatedly cites and the dissent relies upon language contained in the Appellate Division’s opinion in Crocker-Wheeler Elec. Co. v Johns-Pratt Co. (supra) which dealt with a claimed breach of an express warranty pertaining to the fitness of insulating material for a certain use. The court held that there was no actionable express warranty claim *505 because the seller made no warranty with respect to use of the material. The language which Ziff-Davis quotes as a categorical proposition that should control the case before us — i.e., "[i]t is elementary that, in order to entitle the plaintiff to maintain an action for breach of an express warranty, it must be established that the warranty was relied on” (emphasis added) — is contained in dictum (29 App Div, at 302).[3]
Viewed as a contract action involving the claimed breach of certain bargained-for express warranties contained in the purchase agreement, the case may be summarized this way. CBS contracted to buy the consumer magazine businesses in consideration, among other things, of the reciprocal promises made by Ziff-Davis concerning the magazines’ profitability. These reciprocal promises included the express warranties that the audited reports for the year ending July 31, 1984 made by Touche Ross had been prepared according to GAAP and that the items contained therein were fairly presented, that there had been no adverse material change in the business after July 31, 1984, and that all representations and warranties would "be true and correct as of the time of the closing” and would "survive the closing, notwithstanding any investigation” by CBS.
Unquestionably, the financial information pertaining to the income and expenses of the consumer magazines was relied on by CBS in forming its opinion as to the value of the businesses and in arriving at the amount of its bid; the warranties pertaining to the validity of this financial information were express terms of the bargain and part of what CBS contracted to purchase. CBS was not merely buying identified consumer magazine businesses. It was buying businesses which it believed to be of a certain value based on information furnished by the seller which the seller warranted to be true. The determinative question is this: should Ziff-Davis be relieved from any contractual obligation under these warranties, as it contends that it should, because, prior to the closing, CBS and its accountants questioned the accuracy of the financial information and because CBS, when it closed, did so without believing in or relying on the truth of the information?
We see no reason why Ziff-Davis should be absolved from its *506 warranty obligations under these circumstances. A holding that it should because CBS questioned the truth of the facts warranted would have the effect of depriving the express warranties of their only value to CBS — i.e., as continuing promises by Ziff-Davis to indemnify CBS if the facts warranted proved to be untrue (see, Metropolitan Coal Co. v Howard, supra, at 784).[4] Ironically, if Ziff-Davis’s position were adopted, it would have succeeded in pressing CBS to close despite CBS’s misgivings and, at the same time, would have succeeded in defeating CBS’s breach of warranties action because CBS harbored these identical misgivings.[5]
We agree with the lower courts that CBS’s fourth cause of action, for breach of section 6.1 (f) of the purchase agreement, was properly dismissed inasmuch as section 6.1 (f) was a condition to closing, not a representation or warranty, and was waived by CBS.
The order of the Appellate Division should be modified, with costs to the appellant, by denying the motion to dismiss the third cause of action for breach of warranty and the order should be otherwise affirmed.

. Ziff-Davis is a privately held corporation and is a wholly owned subsidiary of defendant Ziff Corporation. Ziff Corp. is the guarantor of the purchase agreement at issue. For ease of reference, when addressing arguments raised by these defendants, I will refer to the defendants collectively as Ziff-Davis.

. CBS’s remaining claims, other than cause of action four (discussed infra, at 499) were also dismissed in prior orders by the lower courts. No issues have been raised as to these dismissed claims.

. We note that this dictum has been criticized (see, 8 Williston, Contracts § 973, at 501 [3d ed]) and to the extent Crocker-Wheeler can be broadly read to require the rule of "reliance” urged by Ziff-Davis in this case it is not to be followed.

. In this regard, analogy to the Uniform Commercial Code is "instructive”. While acceptance of goods by the buyer precludes rejection of the goods accepted (see, UCC 2-607 [2]), the acceptance of nonconforming goods does not itself impair any other remedy for nonconformity (see, UCC 2-607 [2]), including damages for breach of an express warranty (see, UCC 2-714; see generally, 1 White and Summers, Uniform Commercial Code § 10-1, at 501-502 [Practitioner’s 3d ed]; see also, Atwater & Co. v Panama R. R. Co., 255 NY 496, 501-502).

. We make but one comment on the dissent: in its statement that our "holding discards reliance as a necessary element to maintain an action for breach of an express warranty” (dissenting opn, at 506), the dissent obviously misses the point of our decision. We do not hold that no reliance is required, but that the required reliance is established if, as here, the express warranties are bargained-for terms of the seller.