OPINION OF THE COURT
Leonard B. Austin, J.
Plaintiff moves for summary judgment on his complaint and to dismiss defendant’s counterclaims. Defendant cross-moves for summary judgment dismissing the complaint, partial summary judgment as to liability on its counterclaims and for leave to serve an amended answer.
Background
This is an action for breach of contract. Defendant, Components International, Inc., is engaged in the business of distributing electronic components to computer manufacturers. The *362 company was founded by plaintiff, Nathan Hecht, in October 2001. In October 2003, Mark Loren and David Rosenberg each became 25% shareholders. Sometime during 2007, Hecht purchased the 25% interest which was held by Jacob Kohn, who was an original investor in Components and its chief financial officer.
According to Loren, Hecht’s purchase of Kohn’s shares was in violation of a shareholder agreement. Nevertheless, Hecht subsequently sold a 121/2% share to Loren. As a result, Loren and Rosenberg then held a majority of the shares of Components. Hecht retained a 371/2% interest in the corporation and continued as its chief executive officer.
Loren alleges that, in September 2007, he learned that Hecht had used approximately $300,000 of Components’s funds to repay personal loans and that Hecht used the proceeds from a $110,000 loan, which Components borrowed from the Bank of America, to pay personal expenses. Loren further alleges that Hecht transferred approximately $700,000 of Components’s funds to a securities brokerage account, booking the transaction as “inventory.”
In an effort to resolve the breach of fiduciary duty claims arising from these transactions, the parties entered into a “separation and redemption agreement” (agreement) dated November 6, 2007. Pursuant to the agreement, Hecht resigned from his position with Components effective September 19, 2007. In return, the company agreed to purchase his 37x/2% interest and provide him with certain severance benefits.
Components was to pay plaintiff $665,000 for Hecht’s stock, payable as follows: (a) $215,000 at the closing; and (b) the balance of $450,000 by a promissory note which was to be paid in 18 equal monthly installments commencing January 2008. Components was also to pay a “termination payment” of $1,923.08 per week from September 19, 2007 to October 31, 2009 to Hecht and provide Hecht and his family with medical insurance coverage. Components was to pay $35,000 in credit card debt owed to HSBC and American Express, allegedly representing unauthorized personal expenses which Hecht charged to the company. The Bank of America loan was to be assumed by Hecht.
Pursuant to the agreement, Hecht represented that, to the best of his knowledge, Components had no loans or indebtedness other than trade accounts payable and debts set forth in the agreement, including the Bank of America loan and credit *363 card debt. Hecht affirmatively represented that he had not utilized the proceeds of any such loans or indebtedness to pay personal expenses, except as disclosed in the agreement. He further represented there were no actions, suits, or proceedings “pending or overtly threatened” involving Hecht and/or the company. Hecht agreed to indemnify Components for all liability “relating to” the breach or untruth of any representation or warranty contained in the agreement.
Subsequent to the execution of the agreement, one of Components’s customers, CDR Manufacturing, Inc., commenced an action against Components in the Circuit Court of Kentucky. In the Kentucky action, CDR alleged that a quantity of “IC Timekeeper” parts purchased from Components contained short circuits and were not functional. CDR further alleged that the components were “counterfeit” in that they were not produced by ST Microelectronics, the purported manufacturer. CDR sought damages of approximately $26,000 based upon breach of contract and breach of express warranty.
On January 30, 2008, Components wrote to Hecht advising him of the commencement of the CDR action. Components also advised Hecht that another customer, Celestica, Inc., was asserting a claim in the amount of $445,945 based upon Components’s failure to remit sales, or import, tax to the Canadian taxing authorities. According to Loren, Hecht shipped goods to Canada via Federal Express declaring only a nominal amount as the value of the commodity. Although the Canadian tax was assessed based upon the amount shown on the Federal Express shipping receipt, the full amount of the tax, based on the actual value of the goods, was charged to the customer. In the January 30th letter, Components stated that it was electing to “setoff’ the damages arising from these claims by withholding payment under the agreement. This action for breach of the agreement was commenced on February 21, 2008. Hecht also asserts a claim based on the promissory note issued by Components pursuant to the agreement. Asserting that Components repudiated the agreement, Hecht seeks to accelerate the promissory note and recover the balance due on the note as well as the termination payments and health insurance premiums payable under the contract. Components counterclaimed for breach of the agreement, conversion of Components’s funds, common-law fraud, fraud in connection with computers pursuant to 18 USC § 1030 and trespass. With respect to the computer fraud and trespass claims, Components alleges that, between September *364 2007 and January 2008, Hecht repeatedly accessed Components’s computer system via the Internet. It alleges that Hecht deleted over 1,500 e-mails causing Components to incur costs to analyze Hecht’s access and restore the system’s security.
Hecht moves for summary judgment on his claims and summary judgment dismissing the counterclaims asserted by Components. Components cross-moves for summary judgment dismissing the complaint and for partial summary judgment as to liability on its counterclaims or, in the alternative, leave to serve an amended answer asserting counterclaims for breach of fiduciary duty and breach of the duties of loyalty and disclosure. The proposed amended answer also expands the conversion counterclaim to include Canadian taxes due on sales to another customer, SR Telecom, Inc.
Discussion
On a motion for summary judgment, it is the proponent’s burden to make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. (JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 384 [2005].) Failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers. (Id.) However, if this showing is made, the burden shifts to the party opposing the summary judgment motion to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].)
A. Summary Judgment with Respect to the Complaint
1. Plaintiffs Motion
The elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant’s failure to perform; and (4) resulting damage. (Noise In The Attic Prods., Inc. v London Records, 10 AD3d 303, 307 [1st Dept 2004]; Furia v Furia, 116 AD2d 694 [2d Dept 1986]; see also PJI 4:1.)
In order to establish prima facie entitlement to judgment on his breach of contract claims, Hecht must show that he performed pursuant to the agreement and did not breach any representation or warranty provision. He argues that because Components was aware of the dispute with CDR Manufacturing, the Canadian tax liability, and the use of the bank loan, it did not rely upon his representations concerning these matters. *365 Thus, Hecht argues that the warranty provisions were not breached.
A warranty constitutes
“an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.” 0CBS Inc. v Ziff-Davis Publ. Co., 75 NY2d 496, 503 [1990].)
CBS Inc. v Ziff-Davis Publ. Co. involved the purchase of a business pursuant to a contract in which the seller warranted the truthfulness of previously supplied financial information. (Id.) Although the purchaser had reason to believe that there were material misrepresentations in the financial statements, it proceeded with the transaction based upon the seller’s warranty. (Id.) In ruling that the purchaser had stated a claim for breach of express warranty, the Court of Appeals distinguished the reliance requirement in an action for breach of warranty from the reliance requirement in an action for fraud or misrepresentation. (Id. at 503-504.)
In a fraud action, the plaintiff must show a belief in the truth of the representation and a change of position in reliance on that belief. (Id. at 502; see also Lama Holding Co. v Smith Barney, 88 NY2d 413 [1996]; Shovak v Long Is. Commercial Bank, 50 AD3d 1118 [2d Dept 2008].) In a breach of warranty action, on the other hand, the critical question is whether the promisee believed that he was purchasing the promisor’s promise as to the truth of the representation. (CBS Inc. v Ziff-Davis Publ. Co. at 503, relying on Ainger v Michigan Gen. Corp., 476 F Supp 1209, 1224-1225 [SD NY 1979], affd 632 F2d 1025 [2d Cir 1980], and Metropolitan Coal Co. v Howard, 155 F2d 780, 784 [2d Cir 1946].)
The CBS Court stated that the view of “reliance,” as requiring no more than reliance on the express warranty as being a part of the bargain between the parties, reflects the prevailing perception of an action for breach of express warranty as grounded in contract rather than tort. (75 NY2d at 503; see also Ainger v Michigan Gen. Corp. at 1225.) An express warranty is as much a part of the contract as any other term. Once an express warranty is shown to have been relied on as part of the *366 contract, the right to be indemnified for its breach does not depend upon proof that the purchaser believed that the assurances of fact made in the warranty would be fulfilled. (CBS Inc. v Ziff-Davis Publ. Co. at 503-504.)
The parties dispute the extent to which Hecht’s unauthorized charges and personal expenditures were disclosed prior to the execution of the agreement. However, Hecht’s express warranties as to there being no undisclosed lawsuits, loans, or personal expenses were as much a part of the contract as any other term. In order to show that he did not breach any warranty provision concerning these matters, Hecht must establish that Components did not believe that it was purchasing his promise as to the truth of the warranties. In view of the substantial consideration which Components was offering to buy out Hecht’s interest and the amount of unauthorized personal expenditures which had already been disclosed, Hecht has not made this showing. Furthermore, as this case involves a question concerning an express warranty, and not detrimental reliance, the degree of sophistication of the contracting parties as urged by Hecht is irrelevant.*
Because Hecht has not established that he performed pursuant to the agreement and did not breach any warranty, his motion for summary judgment as to his various breach of contract claims must be denied.
2. Defendant’s Motion
Based upon Hecht’s clear, unequivocal promises set forth in the agreement, proof of the existence of breaches of those warranties mandates the granting of summary judgment in favor of Components dismissing the complaint.
As the CBS Court found, “the buyer has purchased seller’s promise as to the existence of the warranted facts, the seller should not be relieved of responsibility because the buyer, after agreeing to make the purchase, forms doubt as to the existence of those facts” (75 NY2d at 504 [citations omitted]). The motives or intention of Components or its remaining shareholders, Loren and Rosenberg, is irrelevant to Hecht’s breach of his express warranties. In any event, the unambiguous terms of the *367 agreement would bar paroi evidence on such claim. (See South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 278 [2005]; Greenfield v Philles Records, 98 NY2d 562, 569 [2002].)
B. Summary Judgment with Respect to Defendant’s Counterclaims
1. Breach of the Separation and Redemption Agreement
Summary judgment is a drastic remedy which should only be granted when the moving party proves that there are no issues of fact to be tried. (Andre v Pomeroy, 35 NY2d 361 [1974]; Kolivas v Kirchoff, 14 AD3d 493 [2d Dept 2005].) Since summary judgment is the procedural equivalent of a trial (S.J. Capelin Assoc, v Globe Mfg. Corp., 34 NY2d 338, 341 [1974]), the non-moving party must be granted all reasonable inferences which can be drawn from the evidence presented. (Negri v Stop & Shop, 65 NY2d 625 [1985].) In opposing a motion for summary judgment, the opposing party must produce evidence sufficient to require a trial of material questions of fact. (Alvarez v Prospect Hosp., supra.)
Hecht has failed to adduce proof as to the existence of any material fact with regard to breach of the agreement. Thus, Components’s motion for summary judgment on this counterclaim must be granted and Hecht’s motion must be denied.
2. Conversion
To establish a cause of action for conversion, plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and that defendant exercised an unauthorized dominion over the thing in question to the exclusion of plaintiffs rights. (Eight In One Pet Prods, v Janco Press, Inc., 37 AD3d 402 [2d Dept 2007].) Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner. (Hoffman v Unterberg, 9 AD3d 386, 388 [2d Dept 2004]; see also State of New York v Seventh Regiment Fund, 98 NY2d 249, 260 [2002].) When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion. (Hoffman v Unterberg, supra.) In its second counterclaim, Components alleges that Hecht converted Canadian taxes as well as the proceeds of the loan from Bank of America.
After collecting the Canadian taxes from Celestica, Hecht was under an obligation to remit them to the Canadian taxing *368 authority. To the extent that he failed to use the funds for that specific purpose, he is liable for the tort of conversion. In addition, as the CEO of Components, Hecht was under a fiduciary obligation to use the proceeds of the Bank of America loan for the benefit of the company.
Components’s motion for partial summary judgment with respect to liability on the conversion counterclaim must be granted as to both the Canadian taxes and the Bank of America loan. Thus, Hecht’s motion for summary judgment dismissing the counterclaim for conversion must be denied.
3. Common-Law Fraud and Computer Fraud
The Computer Fraud and Abuse Act (CFAA) (18 USC § 1030 [a] [4]) provides that anyone who
“knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period” commits a violation of the Act.
A “protected computer” includes a computer which is “used in . . . interstate or foreign commerce or communication” (18 USC § 1030 [e] [2] [B]).
In order for civil relief to be available, the conduct must involve (i) loss during a one-year period aggregating at least $5,000 in value; (ii) potential modification or impairment of medical diagnosis or treatment; (iii) physical injury; (iv) threat to public safety; or (v) damage affecting a computer system used by a government entity for the administration of justice, national defense, or national security (18 USC § 1030 [g]). In this case, liability may be based only on the first factor.
One who visits a Web site and accesses unauthorized information with an intent to defraud will be liable under the CFAA, if the value of the information exceeds $5,000. (EF Cultural Travel BV v Zefer Corp., 318 F3d 58, 62-63 [1st Cir 2003].) It is also a violation of the CFAA to fraudulently obtain unauthorized documents from an e-mail server, assuming that the monetary value threshold has been met. (Butera & Andrews v International Bus. Machs. Corp., 456 F Supp 2d 104 [D DC 2006].) Lack of authorization may be implicit, as where access is protected by a password, or explicit, as where a notice limiting access is given. (EF Cultural Travel BV v Zefer Corp. at 62-63.)
*369 In support of his motion for summary judgment, Hecht submits an affidavit claiming that, after his resignation, his access to Components’s computer system was limited to files in his Outlook Express folder which contained personal information. Although he alleges that no password was necessary to access his office computer, he admits that someone at Components shut down the computer each time he obtained remote access. The act of shutting down the computer implicitly established that Hecht’s access after he left the company was not authorized. Nevertheless, because Hecht alleges that he sought to obtain only personal files, the court concludes that Hecht has established that he had no intent to defraud. Thus, the burden shifts to Components to show that Hecht accessed the computer with fraudulent intent.
In response, Components submits a computer report entitled, “Jacob’s access activity,” apparently referring to Jacob Kohn, the chief financial officer of the company. The report indicates that the “Nathan Office” computer was accessed on November 10 and December 23, 2007 and January 31, 2008. However, the report indicates that Hecht’s access was “standard,” suggesting that sensitive information was not reached. Thus, Components has not met its burden to show a triable issue as to whether Hecht accessed the computer with fraudulent intent. Plaintiffs motion for summary judgment dismissing Components’s CFAA counterclaim should be granted, and Components’s cross motion for partial summary judgment as to liability on that claim must be denied.
4. Trespass
It appears that the CFAA is not intended to preempt state law claims based on unauthorized access to a computer such as trespass to chattel, conversion, or fraud. (See Pacific Aerospace & Elecs., Inc. v Taylor, 295 F Supp 2d 1188, 1194 [ED Wash 2003].) The tort of trespass to chattel consists of intentionally dispossessing another of the chattel or using or intermeddling with a chattel in another’s possession. (Restatement [Second] of Torts § 217.) Liability will attach if the possessor is dispossessed of the chattel; the chattel is impaired as to condition, quality, or value; or the possessor is deprived of the use of the chattel for a substantial time. (Restatement § 218.) Dispossession may be committed in a variety of ways, including taking the chattel from the possession of another without the other person’s consent or destroying the chattel while it is in the other person’s possession. (Restatement § 221.) If the dispossession is without *370 consent, it is immaterial that the actor reasonably, but mistakenly believes that he is also entitled to possession. (Restatement § 221, Comment b [Comment on clause (a)].) If the dispossession seriously interferes with the right of the other to control the chattel, the actor may be subject to liability for conversion. (Restatement § 222.) Harmless intermeddling with a chattel is not actionable. (Restatement § 218, Comment e [Comment on clauses (b) and (c)].)
Interference with information stored on a computer may give rise to trespass to chattel if plaintiff is dispossessed of the information or the information is impaired as to its condition, quality or value. (Davidoff v Davidoff, 12 Misc 3d 1162[A], 2006 NY Slip Op 51002DJ], *11 [Sup Ct, NY County 2006]; see also Elektra Entertainment Group, Inc. v Santangelo, 2008 WL 4452393, *6 [SD NY, Oct. 1, 2008]; School of Visual Arts v Kuprewicz, 3 Misc 3d 278, 281 [Sup Ct, NY County 2003].)
Deleting e-mails destroys computer information and may constitute dispossession of the information if the deletion is without the consent of the possessor of the computer. Although Components alleges in its fourth counterclaim that Hecht deleted a large number of e-mails, there is no allegation as to the nature of the e-mails or their significance to the business of Components. Since the e-mails were stored in Hecht’s Outlook Express folder, Components has not shown that Hecht’s deletion of the e-mails was anything other than harmless intermeddling with the computer system. Hecht’s motion for summary judgment dismissing Components’s counterclaim for trespass must be granted. Defendant’s cross motion for partial summary judgment as to liability on that claim must be denied.
C. Leave to Serve an Amended Answer
CPLR 3025 (b) provides that leave to amend shall be freely given upon such terms as may be just. Nevertheless, CPLR 3016 (b) provides that where a cause of action is based upon breach of trust, the circumstances constituting the wrong shall be stated in detail. In the proposed amended answer, Components alleges that Hecht’s purchase of Kohn’s 25% interest was in violation of a shareholder agreement and his fiduciary duty to the other shareholders. In his affidavit in support of defendant’s cross motion, Loren alleges that Hecht subsequently sold him half of Kohn’s 25% interest, or a 12V2% share, at a price per share significantly in excess of the price which Hecht paid for the stock. Loren was unaware of the true price when he purchased the shares. Because Components does not state the *371 circumstances of its proposed breach of fiduciary duty claims in detail, it is unclear whether the claims are based on Hecht’s unauthorized expenditures or the stock purchase transaction.
Accordingly, Components’s motion for leave to serve an amended answer shall be denied with leave to renew upon a proposed pleading stating in detail the circumstances constituting the breach of fiduciary duty claims.
Accordingly, it is ordered that plaintiffs motion for summary judgment on his complaint is denied; and it is further ordered that defendant’s cross motion for summary judgment dismissing the complaint is granted; and it is further ordered that plaintiff’s motion for summary judgment dismissing the counterclaims is granted with regard to the trespass and computer fraud counterclaims and is otherwise denied; and it is further ordered that defendant’s cross motion for partial summary judgment on its counterclaims is granted with regard to its breach of contract and conversion counterclaims and is otherwise denied; and it is further ordered that defendant’s cross motion for leave to serve an amended answer is denied.

 Hecht urges that the decision in Jordan (Bermuda) Inv. Co., Ltd. v Hunter Green Invs. LLC (566 F Supp 2d 295 [SD NY 2008]), rejects the notion of reasonable or justifiable reliance between sophisticated parties to a contract when a claim of fraud is made. Unlike Jordan, which deals with fraud in precontractual negotiations, this case addresses Hecht’s affirmative, express representations upon which Components relied and which proved to be false.