Walsam 316, LLC v 316 Bowery Realty Corp. (2022 NY Slip Op 00368)





Walsam 316, LLC v 316 Bowery Realty Corp.


2022 NY Slip Op 00368


Decided on January 20, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 20, 2022

Before: Kapnick, J.P., Singh, Moulton, Shulman, Higgitt, JJ. 


Index No. 153318/17 Appeal No. 15114 Case No. 2021-00151 

[*1]Walsam 316, LLC, et al., Plaintiffs-Appellants-Respondents,
v
316 Bowery Realty Corp., Defendant-Respondent, Leonard Taub et al., Defendants, 4-6 Bleecker Street LLC, Defendant-Respondent-Appellant.


Rose & Rose, New York (Paul Coppe of counsel), for appellants-respondents.
Herrick, Feinstein LLP, New York (Sean E. O'Donnell of counsel), for respondent-appellant.
Turek Roth Grossman, New York (Gaddi Goren of counsel), for respondent.



Order, Supreme Court, New York County (Margaret A. Chan, J.), entered on or about December 14, 2020, which, to the extent appealed from, granted in part the motion of plaintiffs Walsam 316, LLC, Walsam 316 Bowery LLC, Walsam Bleecker LLC, Lawber Bowery LLC, and 316 Bowery Next Generation (collectively Walsam) for summary judgment on their contractual and common-law indemnification claims and contribution claims against defendant 316 Bowery Realty Corp. (Bowery), granted the motion of defendant 4-6 Bleecker Street LLC (Bleecker) insofar as it sought summary judgment on its first counterclaim against Walsam for breach of contract, and granted Walsam's motion for summary judgment on its common-law and contractual indemnification and contribution claims against Bleecker, unanimously modified, on the law, to deny Walsam's motion for summary judgment on its contractual and common-law indemnification claims and its contribution claims against Bleecker, and otherwise affirmed, without costs.
In 2012, Bowery entered into a purchase and sale agreement with Bleecker (the Bleecker PSA), under which Bowery was to convert a building it owned into a condominium consisting of commercial and residential units and sell the residential units to Bleecker. However, the next year, when Bowery failed to complete the conversion, Bowery and Bleecker entered into a 99-year master lease under which Bowery leased the residential units to Bleecker; the lease was to terminate after the conversion was completed and the sale was consummated. In a rider to the Bleecker PSA, Bowery had represented that the rents did not exceed those permitted by law; this representation, however, turned out to be false. The representation as to the legality of the rents was incorporated into the master lease, and the master lease provided that in the event of a sale of the leased premises, "it shall be deemed and construed, without further agreement between the parties or between the parties and the purchaser of the [premises], that such purchaser has assumed and agreed to carry out any and all covenants and obligations of [Bowery] hereunder."
After tenants commenced rent overcharge litigation, Bowery entered into a purchase and sale agreement with Walsam (the Walsam PSA) to sell to Walsam all Bowery's rights, title, and interest in the property, including in the master lease and Bleecker PSA, subject to, among other things, the terms of the master lease. Section 14.1 of the Walsam PSA contained a carveout for the rent overcharge litigation, under which Bowery and Walsam agreed that Bowery would continue paying counsel fees in the overcharge litigation up to $100,000 and that Bowery would indemnify Walsam against damage and liability, including attorneys' fees, incurred as a result of the overcharge litigation, up to $250,000.
Supreme Court erred in granting Walsam partial summary judgment on its contractual and common-law indemnification claims and contribution claims against Bleecker. Walsam [*2]had notice of the terms of the master lease and took title to the premises "subject to" the master lease, without exception to any of its provisions. Therefore, Walsam "affirmatively assumed the contractual liability of the original landlord to carry out the covenants and terms of the lease" (Bank of N.Y., Albany v Hirschfeld, 37 NY2d 501, 506 [1975]). In addition, Bowery's representation as to the legality of the rents was a warranty equivalent of a promise to indemnify if, as here, it proved untrue (see CBS Inc v Ziff-Davis Publ. Co., 75 NY2d 496, 502-503 [1990]). Because the rider to the Bleecker PSA provided that the representation survived closing of title, Bowery's obligation to indemnify Bleecker constituted a continuing obligation, which was incorporated into the master lease and is binding on Walsam, which took title with notice of this obligation (Hirschfeld, 37 NY2d at 505-506; compare Bank of N.Y.,Albany v Hirschfeld, 63 AD2d 794, 794-795 [3d Dept 1978], appeal denied 45 NY2d 714 [1978] [building owner's one-time obligation to reimburse lessee for its renovation costs that became due months before sale of premises was not continuing obligation under lease devolving onto purchaser despite its notice of the lease]). Thus, Walsam bore responsibility to Bleecker for liability for rent overcharges.
Supreme Court correctly granted in part Walsam's motion for summary judgment on its contractual and common-law indemnification claims and contribution claims against Bowery upon a finding that Bowery's indemnity obligation to Walsam is subject to the limitations in section 14.1 of the Walsam PSA. "[C]ourts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017]). Moreover, the provision applies to liability in this action, as that liability is incurred as a result of the rent overcharge litigation.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 20, 2022